# SUPREME COURT OF THE UNITED STATES

## CURTIS GIOVANNI FLOWERS *v.* MISSISSIPPI

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF MISSISSIPPI

No. 14–10486.   Decided June 20, 2016

The motion of petitioner for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment is vacated, and the case is remanded to the Supreme Court of Mississippi for further consideration in light of *Foster* v. *Chatman*, 578 U. S. ___ (2016).

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting from the decision to grant, vacate, and remand.

This Court often "GVRs" a case—that is, grants the petition for a writ of certiorari, vacates the decision below, and remands for reconsideration by the lower court—when we believe that the lower court should give further thought to its decision in light of an opinion of this Court that (1) came after the decision under review and (2) changed or clarified the governing legal principles in a way that could possibly alter the decision of the lower court.  In this case and two others, *Williams* v. *Louisiana*, No. 14–9409 and *Floyd* v. *Alabama*, No. 15–7553, the Court misuses the GVR vehicle.  The Court GVRs these petitions in light of our decision in *Foster* v. *Chatman*, 578 U. S. ___ (2016), which held, based on all the circumstances in that case, that a state prosecutor violated *Batson* v. *Kentucky*, 476 U. S. 79 (1986), by striking potential jurors based on race.  Our decision in *Foster* postdated the decision of the Supreme Court of Mississippi in the present case, but *Foster* did not change or clarify the *Batson* rule in any way.  Accordingly, there is no ground for a GVR in light of *Foster*.

The ultimate issue in *Batson* is a pure question of fact—

whether a party exercising a peremptory challenge en-
gaged in intentional discrimination on the basis of race.
476 U. S., at 93–94. If the party contesting a particular
peremptory challenge makes out a prima facie case (that
is, points out a pattern of strikes that calls for further
inquiry), the party exercising the challenge must provide a
legitimate race-neutral reason for the strike. *Id.*, at 97. If
that is done, the trial judge must then make a finding as
to whether the party exercising the peremptory challenge
is telling the truth. *Id.*, at 98. There is no mechanical
formula for the trial judge to use in making that decision,
and in some cases the finding may be based on very intan-
gible factors, such as the demeanor of the prospective juror
in question and that of the attorney who exercised the
strike. *Snyder* v. *Louisiana*, 552 U. S. 472, 477 (2008).
For this reason and others, the finding of the trial judge is
entitled to a very healthy measure of deference. *Id.*, at
479.

*Foster* did not change the *Batson* analysis one iota. In
*Foster*, the Court's determination that the prosecution
struck jurors based on race—a determination with which I
fully agreed, 578 U. S., at ___ (ALITO, J., concurring in
judgment) (slip op., at 9)—was based on numerous *case-
specific factors*, including evidence that racial considera-
tions permeated the jury selection process from start to
finish and the prosecution's shifting and unreliable expla-
nations for its strikes of black potential jurors in light of
that evidence.

In particular, evidence of racial bias in *Foster* included
the following facts revealed to be a part of the prosecu-
tion's jury selection file, which the Court held undermined
the prosecution's defense of its strikes: copies of a jury
venire list highlighting the names of black jurors; a draft
affidavit from a prosecution investigator ranking black
potential jurors; notes identifying black prospective jurors
as "B#1," B#2," and "B#3"; notes suggesting that the pros-

ecution marked "N" (for "no") next to the names of all black prospective jurors; a "definite NO's" list that included the names of all black prospective jurors; a document relating to one juror with notes about the Church of Christ that stated "<u>NO</u>. No <u>Black</u> Church"; the questionnaires filled out by jurors, in which the race of black prospective jurors was circled. *Id.,* at \_\_\_–\_\_\_ (majority opinion) (slip op., at 3–5). But this overwhelming evidence of race consciousness was not the end of the Court's analysis in *Foster*. The Court also discussed evidence that the prosecution's stated reasons for striking black jurors were inconsistent and malleable. The prosecution's various rationales for its strikes "ha[d] no grounding in fact," were "contradicted by the record," and simply "cannot be credited," according to the Court. *Id.,* at \_\_\_, \_\_\_ (slip op., at 12, 15, 17). Some of the purported reasons for striking black prospective jurors "shifted over time" and could not withstand close scrutiny. *Id.*, at \_\_\_ (slip op., at 18). And other reasons, "while not explicitly contradicted by the record, [we]re difficult to credit" in light of the way in which the State treated similarly situated white jurors. *Id.,* at \_\_\_–\_\_\_ (slip op., at 15–17). In sum, the Court's decision in *Foster* relied on substantial, case-specific evidence in reaching its conclusion that the prosecution's proffered explanations for striking black prospective jurors could not be credited.

In the three cases in which the Court now GVRs in light of *Foster*, what the Court is saying, in effect, is something like this. If we granted review in these cases, we would delve into the facts and carefully review the trial judge's findings on the question of the prosecution's intent. That is what we did in *Foster*. But we do not often engage in review of such case-specific factual questions, and we do not want to do that here. Therefore, we will grant, vacate, and remand so that the lower court can do—or, redo—that hard work.

This is not a responsible use of the GVR power. In this case, the Supreme Court of Mississippi decided the *Batson* issue. It found insufficient grounds to overturn the trial judge's finding that the contested strikes were not based on race. If the majority wishes to review that decision, it should grant the petition for a writ of certiorari, issue a briefing schedule, and hear argument. If the majority is not willing to spend the time that full review would require, it should deny the petition.

The Court's decision today is not really a GVR in light of our factbound decision in *Foster*. It is, rather, a GVR in light of our 1986 decision in *Batson*. But saying that would be ridiculous, because the lower courts fully considered the *Batson* issue this petition raises. By granting, vacating, and remanding, the Court treats the State Supreme Court like an imperious senior partner in a law firm might treat an associate. Without pointing out any errors in the State Supreme Court's analysis, the majority simply orders the State Supreme Court to redo its work. We do not have that authority.

I would deny the petition. I respectfully dissent.