*1224 ON REMAND
ROSEMARY LEDET, Judge.
hThe defendant, Jabari Williams, was convicted of second degree murder and sentenced to life imprisonment. In State v. Williams, 13-0283 (La.App. 4 Cir. 4/23/14), 137 So.3d 832 (“Williams I”), we affirmed Mr. Williams’ conviction and sentence. In State v. Williams, 14-1231 (La.1/16/15), 157 So.3d 1128 (“Williams II ”), the Louisiana Supreme Court denied Mr. Williams’ application for supervisory writ.
In Williams v. Louisiana, 579 U.S. -, 136 S.Ct. 2156, — L.Ed.2d -, 2016 WL 3369515 (2016) (“Williams III”), the United States Supreme Court (the “Supreme Court”) granted Mr. Williams’ petition for a writ of certiorari, vacated this court’s judgment in Williams I, and remanded the case to this court for further consideration in light of Foster v. Chatman, 578 U.S. -, 136 S.Ct. 1737, 195 L.Ed.2d 1 (2016). In Foster, the Supreme Court reversed a defendant’s capital murder conviction based, on a Batson violation.[1]
|aOn remand, we entertained additional oral and written argument from Mr. Williams and the State. For the reasons that follow, we reinstate Mr. Williams’ conviction and sentence.
FACTUAL AND PROCEDURAL BACKGROUND
This court set forth in detail the facts of the underlying crime for which Mr. Williams was convicted in Williams I,[2], The *1225 underlying crime was a shooting that occurred in New Orleans, Louisiana, -on April 10, 2011. On that date, Selvin Gonzales, a Honduran national who had been living in New Orleans for about five years, was shot and killed shortly after leaving a gas station located near his home. Seeking help in identifying the perpetrator, the New Orleans Police Department | S(“NOPD”), nine days after the,.shooting, released a portion of the gas station surveillance, video to the news media.[3] The next day, Mr. Williams voluntarily came to NOPD headquarters and identified himself as the person in the gas station video. Two NOPD detectives conducted a videotaped interview of Mr. Williams. Initially, Mr. Williams denied shooting the victim. One of the detectives told Mr. Williams that the police had a video of him shooting the victim, which was untrue. Ultimately, Mr. Williams confessed to shooting the victim; however, he claimed that he did so in self-defense.
In August 2011, the State indicted Mr. Williams for second degree murder. . He pled not guilty. In June 2012, a jury trial was held in this matter. During jury selection, the parties questioned potential jurors across two panels and, following the voir dire of each panel, exercised cause and peremptory challenges. Back strikes were not allowed. (A minute entry reflects that both Mr. Williams and the State excused a total of eleven jurors and that six jurors were excluded for cause.)
At the end of the voir dire of. the first panel, the State exercised six of its twelve peremptory, challenges. In response, the defense made its first Batson challenge. The basis for this challenge was that the six potential jurors the State used its peremptory challenges to strike were all African Americans — “black male or female.”[4] In ruling on the first challenge, the'district court judge commented that she was “counting [her] numbers” and then remarked: “we had 16 potential jurors. And I believe, if my count is right, there áre five non African-American — well, six |4non African-American; five white American jurors seated. I’m not sure what Mr. Ful-gencio’s origin is.”[5] The district court then required the prosecutor to provide race-neutral reasons; the prosecutor did so as to each of the six potential jurors.[6] *1226 The district court then denied the defense’s first Batson challenges.
Is At the end of the voir dire of the second panel, the State exercised five of its remaining six peremptory challenges to strike the following potential jurors: Mr. West, Ms. Carter, Mr. Washington, Mr. Jackson, and Ms. Ballard. In response, the defense raised its second Batson challenge, noting that all five excused jurors were African-Americans. The following colloquy ensued:
BY MR. ENGELBERG [Defense counsel]:
One second. Again, I believe all these are African-American jurors, judge.
THE COURT:
Let me just say this. Just because the people are African American doesn’t mean you can’t strike them. Now, if you have a reason to believe that—
MS. PARKER [Defense counsel]:
Well judge, I’d like to know the reason for Miss Carter. Because I never heard her open her mouth the entire time.
BY MR. ENGELBERG [Defense counsel]:
And, judge, clearly, there’s a pattern, 11 for 11. That’s a pattern, judge.
Disagreeing, the district court reasoned as follows:
Well, but I disagree with you. I mean, I don’t know that it’s a pattern that because the people are African American. I mean, the pattern may be that they’re African American; but they have to strike them simply because of that. And what I’m saying to you is I do recognize that as to [Mr.] West, I recall the answer that he gave, Mr. Washington.
Christopher Jackson, I don’t know that I have anything for him. For Miss Ballard I do recall the answers that she gave and Miss Ballard’s body language. But I will ask the state specifically as to Miss Carter — Miss Carter and Miss— Mr. Jackson — excuse me.
The State the provided reasons as to Ms. Carter and Mr. Jackson, stating:
With regards to Miss Carter ... [Defense counsel] was asking for ratings of the New Orleans Police Department. Mr. West | r,responded that he would give ‘em a zero and started laughing about it. And Miss Carter was who he was talking to.
*1227 She was laughing along with Mr. West, as well. During the actual voir dire of this panel, she appeared disinterested and kind of had -a — you know, slouched down in the chair, as if she didn’t want to be asked any questions ....
... Mr. Jackson has a prior arrest.
After the State provided reasons as to Ms. Carter and Mr. Jackson, which the district court found acceptable, the defense attorney requested race-neutral reasons for the other three jurors — Mr. West, Mr. Washington, and Ms. Ballard (the “Challenged Three Jurors”). The following colloquy occurred:
BY MR. ENGELBERG (Defense counsel):
And, Judge, I’d ask for race-neutral reasons for the other African Americans that they Struck in the—
BY THE COURT:
Well, I’m going to deny your request. Because I specifically recall the responses of these particular jurors. And I do believe that those would be based on the responses valid for them to strike them. But I did not hear from [Ms.] Carter or [Mr.] Jackson. And that is why I asked them to place those on the record. So I’ll note your objections.
BY MR. ENGELBERG (Defense counsel):
My — my—for the record, judge, for the Court to provide those race-neutral reasons.
BY THE COURT:
I’m not providing them. But I’m not allowing — I’m not making them provide them; because I do believe there was sufficient conversation with them, as far as the state striking those individual jurors. I don’t know what specifically their reason is. But I do recall that they gave answers to both of you in the voir dire. And I believe that it is not an issue of a pattern for a Batson Challenge. So I will note your objection.
The district court thus denied the second Batson challenge.
| ./Following a two-day trial, the jury unanimously found Mr. Williams guilty as charged. The district court sentenced Mr. Williams to life imprisonment without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:30.1(B) (providing that the mandatory sentence for second degree murder is “life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”).

DISCUSSION

As noted at the outset, this case is presently before us on remand from the Supreme Court for further consideration in light of the Foster case. Shortly after it handed down its decision in the Foster case, the Supreme Court issued a trio of “GVRs” in three pending writ applications-one from Louisiana, one from Alabama, and one from Mississippi — Williams III, supra; Flowers v. Mississippi, 579 U.S. -, 136 S.Ct. 2157, — L.Ed.2d - (2016); and Floyd v. Alabama, — U.S. -, 136 S.Ct. 2484, — L.Ed.2d - (2016).
“GVR” is the Supreme Court’s acronym for its “practice of granting certio-rari, vacating, and remanding for further consideration in light of some intervening development.” Does 1-7 v. Round Rock Indep. Sch. Dist., 540 F.Supp.2d 735, 748 (W.D.Tex.2007) (citing Carter v. Johnson, 131 F.3d 452, 457 (5th Cir.1997)). The Supreme Court generally uses the GVR device when it believes that “the lower court should give further thought to its decision in light of an opinion of this Court that (1) came after the decision under review and (2) changed or clarified the governing legal principles in a way that could *1228 possibly alter the decision of the lower court.” Flowers, 579 U.S. at -, 136 S.Ct. at 2157 (Alito, J., dissenting).
|SA GVR is not a decision on the merits. Diaz v. Stephens, 731 F.3d 370, 378 (5th Cir.2013) (citing Kenemore v. Roy, 690 F.3d 639, 642 (5th Cir.2012); and Tyler v. Cain, 533 U.S. 656, 666, n. 6, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001)). A GVR thus “does not bind the lower court to which the case is remanded; that court is free to determine whether its original decision is still correct in light of the changed circumstances or whether a different result is more appropriate.” Kenemore, 690 F.3d at 642.
Although a GVR is not a full blown opinion, the GVR in Williams III was accompanied by both concurring and dissenting opinions. The concurring opinion was authored by Justice Ginsburg, who was joined by three other justices (Justices Breyer, Sotomayor, and Kagan). The concurring opinion identified the issue presented in this case as whether a Louisiana procedural rule can be reconciled with the Supreme Court’s Batson jurisprudence. The Louisiana procedural rule — codified in La.C.Cr.P. art. 795(C) — allows judge-supplied, as opposed to prosecutor-supplied, race-neutral reasons at step two of the Batson analysis if “the court is satisfied that such reason is apparent from the voir dire examination of the juror.” La.C.Cr.P. art. 795(C).
The concurring opinion emphasized the Louisiana Supreme Court’s acknowledgement in State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791, that the Louisiana procedural rule violates the Supreme Court’s Batson jurisprudence.[7] The concurring opinion also emphasized that the dissenting judge in Williams I (Judge Belsome) noted that “‘the United States Supreme Court has made clear ... that the 19State is obligated to offer a race-neutral reason .... Allowing the court to provide race-neutral reasons for the State violates the [Constitution].’ ” Williams III, supra (Ginsburg, J., concurring) (quoting Williams I, 13-0283 at p. 3, 137 So.3d at 859 (Belsome, J., dissenting)). On remand, the concurring opinion suggested that this court should reconsider Mr. Williams’ argument that the Louisiana procedural rule violates the Supreme Court’s Batson jurisprudence.
The dissenting opinion in Williams III was authored by Justice Alito, who was joined by Justice Thomas. The dissenting opinion noted that whether Mr. Williams is entitled to relief based on a step two Bat-son violation — as the concurring opinion suggests and Mr. Williams contends — has nothing to do with Foster, which was a step three Batson case. The dissenting opinion also incorporated by reference the reasons the author, Justice Alito, set out in his dissenting opinion in Flowers, supra. In his dissenting opinion in Flowers, Justice Alito pointed out that Foster did not change the standards set forth in Batson “one iota.” Flowers, 579 U.S. at -, 136 S.Ct. at 2158 (Alito, J., dissenting). As a result, he noted that the GVRs in the trio of cases were, in actuality, improper remands to reconsider the Batson issue anew.
Echoing the concurring opinion in Williams III and the dissent in Williams *1229 I, Mr. Williams’ sole assignment of error on remand is that “[t]he trial court committed reversible error when it provided the race-neutral justifications for the State’s peremptory challenges, in violation of Mr. Williams’s rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, as well as his rights under La. Const. art. I, §§ 2, 12, 16, and 17.” The gist of Mr. Williams’ argument |1flon remand is that we should adopt the position set for in Judge Belsome’s dissent in Williams I, cited by the concurrence in Williams III, which is that the State was required to submit race-neutral explanations for all of the jurors during the second Batson challenge.
In his dissent in Williams I, Judge Bel-some reasoned that “[i]t is clear from the trial court’s statements that it found a prima facie case of racial discrimination. The burden then shifted to the State to present race-neutral explanations for the strikes.” Williams I, 13-0283 at p. 1, 137 So.3d at 859 (Belsome, J., dissenting). Continuing, Judge Belsome stated:
The Louisiana Supreme Court, in Elie, supra, relied on La.C.Cr.P. art. 795(C) in finding that the State is not required to articulate a race-neutral reason if “the court is satisfied that such reason is apparent from the voir dire examination of the juror.” Id., 05-1569 at pp. 7-8, 936 So.2d at 797. However, the United States Supreme Court has made clear in Batson, Johnson[8] and Miller-El[9] that the State is obligated to offer a race-neutral reason. The judge
is an arbiter not a participant in the judicial process.
Williams I, 13-0283 at pp. 2-3, 137 So.3d at 859 (Belsome, J., dissenting).
The State, in its brief on remand, counters that the district court never went beyond step one. The district court, at step one, found that Mr. Williams failed to make a prima facie showing of purposeful discrimination. Thus,- the burden of production never shifted to the State to articulate race-neutral reasons for its peremptory challenges in step two of the Batson analysis; and the district court did not err in refusing to require the State -to articulate race-neutral reasons for the Challenged Three Jurors. Indeed, the State emphasizes that Mr. Williams, in his | noriginal brief in Williams I, conceded that the district court found that he had failed to make a prima facie showing of purposeful discrimination. We agree.
At the outset, we note that the Batson issue presented here pertains solely to the Challenged Three Jurors — the ones who race-neutral reasons were not provided for by the prosecutor. We further note that this case presents solely a step one Batson issue. Before addressing that step one issue, however, we find it appropriate to explain why we find the following three issues are not before us: (i) a step three Batson issue, as presented in Foster; (ii) a step two Batson issue, as presented in Elie; and (iii) a moot step one Batson issue, as presented in Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).[10] We separately address each of these issues.
*1230 The Foster case
Although the Supreme Court’s GVR mandated we reconsider this case in light of Foster, the Supreme Court in Foster did not change the applicable principles for analyzing a Batson claim. Instead, the Supreme Court in Foster reaffirmed the teaching of Batson. The Supreme Court reiterated the well-settled principle that “[t]he ‘Constitution forbids striking even a single prospective juror for a discriminatory purpose.’ ” Foster, 578 U.S. at -, 136 S.Ct. at 1747 (quoting Snyder, 552 U.S. at 478, 128 S.Ct. at 1208). The Supreme Court also reiterated the three-step process enumerated in Batson for determining whether a strike is discriminatory.[11]
Pigeonholing Foster as a step three case, the Supreme Court noted the parties agreed that the defendant had demonstrated a prima facie case (step one) and that the prosecutors had offered race-neutral reasons (step two). The Supreme Court thus expressly confined its analysis to step three. Applying the well-settled Batson principles, the Supreme Court reversed the defendant’s capital murder conviction, reasoning that the State’s “[t]wo peremptory strikes on the basis of race are two more than the Constitution allows.” Foster, 578 U.S. at -, 136 S.Ct. at 1755.[12]
Unlike in Foster, this case does not present a fact-intense step three issue, rather, this case presents a step one issue as to whether the district court erred in | ^finding that Mr. Williams failed to establish a prima facie case of discrimination as to the Challenged Three Jurors.
The Elie case
This case also is distinguishable from Elie, which addressed a step two Batson issue. In Elie, the district court found that the defendant had demonstrated a *1231 prima face case (step one)[13] and itself offered race-neutral reasons for some of the jurors, as opposed to requesting the prosecutor provide such reasons. See La. C.Cr.P. art. 795(C). In this context, the Louisiana Supreme Court in Elie, as the concurring opinion in Williams III and the dissent in Williams I noted, approved the district court’s application of the Louisiana procedural rule. In so doing, the Louisiana Supreme Court reasoned as follows:
From the outset, we note this procedure does not accord with the observation in Johnson that the Court’s evolving Batson jurisprudence “is designed to produce actual answers to suspicions and inferences that discrimination may-have infected the jury selection process .... [T]he inherent uncertainty present in inquiries of discriminatory purpose counsel against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question.” Johnson, 545 U.S. at 172, 125 S.Ct. at 2418 (emphasis added). Notwithstanding this non-compliance with the observation the United States Supreme Court made in Johnson, we find La.Crim.Code Ann. art. 795(C) does not require articulation if |u“the court is satisfied that such reason is apparent from the voir dire examination of the juror.”
As former Chief Justice Kimball stated in her dissent in Elie, “[t]he trial court’s statements after defendant raised the Bat-son challenges make it clear that it found defendant established a prima facie case of racial discrimination and, thereafter, the burden shifted to the prosecutor to present race-neutral explanations for the strikes.” Elie, 05-1569, p. 3, 936 So.2d at 804 (Kimball, J., dissenting). Unlike in Elie, and contrary to Judge Belsome’s suggestion in his dissent in Williams I, the district court’s statements on the record during voir dire in this case do not support a finding that it found a prima facie case and proceeded to step two. To the contrary, the district court refused to do so. As the district court put it, “I’m not providing them. But I’m not allowing — I’m not making them provide them.” Thus, the district court’s analysis of the Batson challenge as to the Challenged Three Jurors never proceeded past step one.
Moot Step One
The Supreme Court in the Hernandez case enunciated the procedural rule that when the prosecutor supplies race-neutral reasons, the step one issue of whether the defendant has made a prima facie case is moot. Mr. Williams raised the Hernandez procedural rule — mootness of a step one analysis when a step two analysis has occurred — in his reply brief in Williams I; he argued that “[t]he inquiry at this point[14] was not whether the defense estab *1232 lished a prima facie case of discriminatory intent.” Quoting State v. Sparks, 88-0017, p. 45 (La.05/11/11), 68 So.3d 435, 473, he argued that, at that point, “[bjecause the prosecutor offered a h ¿neutral reason, the question of whether the defendant had made a prima facie showing of intentional discrimination is rendered moot.” Id. (citing Hernandez, supra). Mr. Williams’ reliance on the Hernandez procedural rule is misplaced.
Although the district court required the prosecutor to provide race-neutral reasons for two of the five jurors that the State struck in the second voir dire panel, each Batson challenge must be addressed separately. See State v. McElveen, 10-0172, p. 61 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1073 (holding that “where the initial disparate pattern of strikes has been shown to be unrelated to any intent on the part of the prosecutor, the defendant is required to make a second prima facie analysis as to any subsequent strikes”); see also People v. Rodriguez, 351 P.3d 423, 429 (Colo.2015) (noting that “[t]o determine whether we can conclude that either strike violated Batson, we evaluate the adequacy of the trial court’s findings with respect to Ms. D. and Ms. A. separately”). Neither the prosecutor nor the district court provided race-neutral reasons for the Challenged Three Jurors. Indeed, the district court, as noted above, expressly refused to order the prosecutor to do so or to do so itself. Thus, this is not a case in which step one of the Batson analysis was rendered moot by the prosecutor being asked to, or volunteering to, supply race neutral reasons.
Summarizing, we find this case presents neither a fact-intense step three issue, like Foster, nor a constitutional step two issue regarding the district court applying the Louisiana procedural rule allowing judge-provided race-neutral reasons, like Elie. Rather, this case presents a step one issue of whether the first Batson step — a prima facie case of discrimination — was met as to the Challenged Three Jurors.
J^LACK OF A PRIMA FACIE CASE
In its Batson jurisprudence, the Supreme Court has repeatedly referred to the prima facie showing in step one as “a hurdle the party making a Batson challenge must clear before the striker is required to proffer any explanation for the challenged strikes.” United States v. Stewart, 65 F.3d 918, 924 (11th Cir.1995). Step one has also been described as placing “a burden of production or of ‘going forward’ on the defendant.” State v. Green, 94-0887, p. 24 (La.5/22/95), 655 So.2d 272, 287.
To make a prima facie case of discrimination, Batson sets forth a combination of three elements that the challenging party, here the defendant, must establish. Those three elements are as follows: (1) the defendant must demonstrate that the prosecutor’s challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause; and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the prospective juror on account of race. State v. Nelson, 10-1724, 10-1726, pp. 9-10 (La.3/13/12), 85 So.3d 21, 29 (citing Batson, 476 U.S. at 96, 106 S.Ct. at 1723).
Explaining the significance of a defendant clearing the step one Batson hurdle, the Louisiana Supreme Court in State v. Sparks, 88-0017, pp. 37-38 (La.5/11/11), 68 So.3d 435, 468-69, noted that “[t]he inference is ‘necessary’ because if such an inference cannot be drawn from the evidence *1233 presented by the defendant, he is unable to make a prima facie case of purposeful discrimination and his Batson challenge expires at the threshold.” [State v.] Duncan, [99-2615, p. 13,] 802 So.2d [533,] 544 (quoting State v. Green, 94-0887, p. 28 (La.5/22/95), 655 So.2d 272, 290 n. 24). Id. A defendant thus must clear the prima facie case hurdle to. proceed beyond step one of the Batson analysis.
In this case, the first two elements of a prima facie case are undisputed. The prosecutor’s peremptory challenges' were directed at members of a cognizable racial group. The challenges were peremptory rather than for cause. Hence, the sole issue is whether the third element required to make a prima facie case was satisfied — whether Mr. Williams established sufficient circumstances to warrant an inference of a discriminatory purpose for the State’s strikes.
“No formula exists for determining whether the defense has established a prima facie case of purposeful racial discrimination.” State v. Jacobs, 99-0991, pp. 1-2 (La.7/16/01), 803 So.2d 933, 958 (on reh’g). Addressing this issue, the Supreme Court in Batson stated that “a pri-ma facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives ‘rise to an inference of discriminatory purpose.’ ” 476 U.S. at 94, 106 S.Ct. at 1712. Providing further guidance on this issue, the Supreme Court in Johnson instructed that it “did not intend the first step. to be so onerous that a defendant would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to know with certainty — that the challenge was more likely than not the product of purposeful discrimination.” 545 U.S. at 170, 125 S.Ct. at 2413. Rather, “a defendant satisfies’the requirement of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.” Id.
118In reviewing a Batson challenge, courts have examined relevant numeric[15] and non-numeric evidence.[16] Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir.2007). The Supreme Court in Miller-El v. Dretke, 545 U.S. 231, 238, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), examined five factors that it found relevant for “ferreting out” the discriminatory purpose of peremptory strikes. In order to provide a structure for analyzing the issues Mr. Williams raises on remand in this case, we examine the following three of the five factors examined in Miller-El:[17]
*1234 • Statistical analysis of stricken jurors,
• Comparative juror analysis, and
• Contrasting questions to jurors of a different race.[18]
1 statistical Analysis of Stricken Jurors
In Miller-El, the Supreme Court found the statistical evidence alone supported a finding of discrimination, explaining:
[T]he statistical evidence alone raises some debate as to whether the prosecution acted with a race-based reason when striking prospective jurors. The prosecutors used them peremptory strikes to exclude 91% of the eligible African-American venire members, and only one served on petitioner’s jury. In total, 10 of the prosecutors’ 14 peremptory strikes were used against African-Americans. Happenstance is unlikely to produce this disparity.
Miller-El v. Cockrell, 537 U.S. 322, 342, 123 S.Ct. 1029, 1042 (2003). In contrast to the statistical evidence in Miller-El, Mr. Williams’ statistical evidence consists solely of the fact the State used eleven of its twelve peremptory challenges to strike African-American jurors, which he contended established a pattern. He simply argued, quoting Foster, supra, that the State’s pattern of exclusively challenging African-American jurors “plainly demonstrates a concerted effort to keep black prospective jurors off the jury.” Mr. Williams thus failed to provide a context for his statistical-pattern argument.
A similar statistical-pattern argument was made by the defendant in State v. Holand, 10-0325 (La.App. 4 Cir. 4/18/11), 64 So.3d 330, writ granted, 11-0974 (La.11/18/11), 125 So.3d 416.[19] Finding the defendant’s argument persuasive, this court held that “the State’s use of ten of its eleven peremptory challenges to strike African-Americans — nine of whom were women — was sufficient to establish a pri-ma facie case of discrimination racial, gender, or both.” Holand, 10-0325 at p. 16, 64 So.3d at 338-39. Continuing, this court reasoned that “[tjhese numbers alone were sufficient to establish at least ‘the inference’ that discrimination had 12noccurred.” Id. Disagreeing, the Louisiana Supreme Court granted the State’s writ application and, in an unpublished per curiam, reversed for the following reasons:
[I]n the present case, it is not possible to determine from the raw number of strikes exercised, without some context, that the circumstances gave rise to a reasonable inference of discriminatory purpose, as was the case in [State v.] Givens[, 99-3518 (La.1/17/01), 776 So.2d 443] and [State v.] Drake, [08-1194 *1235 (La.1/30/09), 2 So.3d 416] because the strikes resulted in the demonstrable skewing of the racial or gender compositions of the jury.
This Court further emphasized in Duncan that it is important for the defendant to come forward with facts, not just numbers alone, when asking the district court to find a prima facie case. Duncan, 99-2615 (La.10/16/01), 802 So.2d 533, 544 (citing Moore, 895 F.2d at 485); see also United States v. Dawn, 897 F.2d 1444, 1448 (8th Cir.1990) (“[A] defendant who requests a prima facie finding of purposeful discrimination is obligated to develop a record, beyond numbers, in support of the asserted violation”). Here, the defendant alleged no additional facts beyond the raw number of strikes and failed to develop the record beyond those numbers.
The jurisprudence thus holds that bare statistics alone, without any context, are insufficient to support a prima facie case of discrimination. See Duncan, 99-2615 at p. 14, 802 So.2d at 544; see also United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir.1989) (noting that “[t]here is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions.”). This is because “the value of numbers alone, without any indication of the race or gender composition of the jury selected or the pool from which it was drawn, is limited at best.” State v. Mason, 47,642, p. 20 (La.App. 2 Cir. 1/16/13), 109 So.3d 429, 441 (citing Holand, supra).
Here, Mr. Williams failed to come forward with facts or context, beyond the bare number of African-Americans the prosecutor struck, to develop a record to support the asserted Batson violation. Indeed, in his brief on remand, he acknowledges that “[t]he record does not contain evidence of the races of any of 12tthe jurors questioned, including those who ultimately sat on Mr. Williams’s jury.” It is thus impossible to make a valid statistical analysis of the stricken jurors. This factor does not support a prima facie case.

Comparative Juror Analysis

The Supreme Court in Miller-El noted that comparative juror analysis — “side-by-side comparisons of some black venire panelists who were struck and white panelists [who were] allowed to serve” — are “[m]ore powerful than the bare statistics.” 545 U.S. at 232, 125 S.Ct. at 2319. Louisiana courts, likewise, have recognized that “[t]he comparison of the treatment of the potential jurors of different races is essential to the establishment of the initial pri-ma facie case.” State v. Trotter, 37,325, p. 13 (La.App. 2 Cir. 8/22/03), 852 So.2d 1247, 1254 (citing State v. Harris, 01-0408 (La.6/21/02), 820 So.2d 471, 476).
Here, however, Mr. Williams acknowledges that the meager record on the racial composition of the jury and the jury venire precludes a comparative juror analysis. Indeed, he concedes, in his brief on remand, that the record on this point “renders it impossible for the defense to compare the answers of the stricken African-American jurors against the answers of similarly-situated white jurors who were not challenged.”
Nonetheless, in his brief on remand, Mr. Williams suggests that the record is sufficient to establish that the State struck at least one of the Challenged Three Jurors — Ms. Ballard — in a discriminatory matter.[20] In support of that argument, he suggests that a comparative jury analysis *1236 be employed. As to Ms. Ballard, Mr. | agWilliams emphasizes that she gave a single substantive answer in voir dire, which revealed that she was an ideal juror for the State. The question to which she gave that answer was whether she believed someone could falsely confess to a crime; her answer was: “[w]ell, if they didn’t do it, you can’t trick nobody into saying something they didn’t do.” Mr. Williams contends that since this case turned on whether the jury believed he falsely confessed to the crime, the State’s challenge to Ms. Ballard, a model juror, is “inexplicable.” He further contends that the challenge is even more suspicious given that the State also struck Mr. Washington whose answer to that same question directly contradicted Ms. Ballard’s answer. He contends that striking two jurors with nothing in common but their race is strong evidence of racial discrimination against at least one of them.
Mr. Williams’ argument regarding Ms. Ballard seeks to make a comparative analysis of a stricken venire person’s response to the response by another stricken venire person. This is not an appropriate comparative juror analysis;[21] an appropriate comparative juror analysis entails considering a stricken venire person’s response to the responses by other venire persons who were not stricken. See Miller-El, supra. Comparing Ms. Ballard’s and Mr. Washington’s responses to the same question does not provide a basis for inferring discrimination; both Mr. Ballard and Mr. Washington are African-American jurors who were struck by the State, Regardless, as noted above, an appropriate comparative juror analysis is not Impossible here given the meager record. This factor thus does not support a prima facie case.

Contrasting Questions to Jurors of a Different Race

The Supreme Court in Miller-El also considered the “contrasting voir dire questions posed respectively to black and non-black panel members.” 545 U.S. at 233, 125 S.Ct. at 2321. Mr. Williams cites the fact that the State “barely engage[d] in questioning” of the Challenged Three Jurors as suggesting a discriminatory purpose. Again, as with the comparative jury analysis, the meager record in this case makes it impossible to compare the extent of questioning by the prosecutor, on voir dire of the Challenged Three Jurors with the questioning of similarly-situated Caucasian jurors. This factor thus does not support a prima facie case.
CONCLUSION
In reviewing a trial court’s finding that a defendant failed to establish a prima facie case, the following principles apply:
Batson accords a trial court , considerable flexibility and broad discretion in this regard because “trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges create a prima facie case of discrimination against black jurors.” The trial court plays a unique role in the dynamics of voir dire, for it is the court that observes firsthand, the demeanor of the attorneys and venire persons, the nuances of questions. asked, the racial composition of the venire, and the general atmosphere of the voir dire that *1237 simply cannot be replicated from a cold transcript. The trial court’s determination that the defense failed to set forth a prima facie case of purposeful discrimination merits great deference on appeal. The trial court’s ruling regarding whether there was any discriminatory intent in the state’s peremptory challenges is reviewed with great deference.
State v. Johnson, 50,005, pp. 17-19 (La.App. 2 Cir. 8/12/15), 175 So.3d 442, 45556 (internal citations omitted).
[^Applying these principles, we find no error in the district court’s finding that Mr. Williams failed to make a prima facie case that the State exercised its peremptory challenges to strike the Challenged Three Jurors on the basis of race. Mr. Williams failed to produce sufficient evidence to allow the district court to draw an inference of purposeful discrimination. During the voir dire of the second panel, defense counsel’s sole ground for making a Batson challenge was the prosecution’s pattern of strikes — eleven of its eleven strikes (100%) against African Americans. The district court rejected this argument, finding no pattern and thus no prima facie case of discrimination.[22]
Despite its finding that there was no pattern, the district court extended its Batson step one analysis to consider whether any other circumstances might support a finding of a prima facie case. In so doing, the district court noted there were apparent reasons for the State to strike the Challenged Three Jurors. As we noted in Williams I, the record reflects that the apparent reasons the district court alluded to regarding the Challenged Three Jurors were as follows: “[Mr.] West said he did not approve of police lying to a suspect. [Mr.] Washington said police have been known to ‘trick’ defendants into confessing, [Ms.] Ballard said [s]he served on a jury, but could not recall any details.” 13-0283 at 24, 137 So.3d at 851, n. 17. The apparent reasons were based on the district court’s observations while conducting voir dire.
The district court’s consideration of the apparent reasons for the State striking the Challenged Three Jurors falls within the ambit of considering “all relevant circumstances” when determining whether, for purpose of step one, an 12sinference of discrimination is established. See United States v. Stephens, 421 F.3d 503, 515-16 (7th Cir.2005) (noting that “court's considering Batson claims at the prima facie stage may consider apparent reasons for the challenges discernible on the record, regardless of whether those reasons were the actual reasons for the challenge” and citing Mahaffey v. Page, 162 F.3d 481, 483 n. 1 (7th Cir.1998)). We find no error in the district court’s consideration of the apparent reasons in confirming its determination that Mr. Williams failed to establish a prima facie case.
As discussed earlier, this case is distinguishable from the Elie case. In the Elie case, the district court found the defendant established a prima facie case as to all the challenged jurors; the district court then proceeded to step two and itself offered race-neutral reasons for some of the jurors, as opposed to requesting the prosecutor provide such reasons. See La.C.Cr.P. art. 795(C). Unlike in the Elie case, the district court in this case never went beyond step one. When the district court finds the defendant failed to establish a prima facie case of discrimination (step one), the Batson analysis terminates; the *1238 burden of production “never shifts to the prosecutor to articulate neutral reasons (step two).” Duncan, 99-2615, p. 13, 802 So.2d at 544; see also State v. Seals, 09-1089, p. 24 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 312, n. 47 (noting that “[t]he second and third steps of the Batson analysis are not reached because the trial judge did not find a prima facie case was made with regard to any of the potential jurors in question.”). Such is the case here.
DECREE
For the forgoing reasons, the defendant’s conviction and sentence is reinstated.
CONVICTION AND SENTENCE REINSTATED
BELSOME, J., dissents with reasons.

. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the Equal Protection Clause prohibits the use of peremptory challenges to discriminate on the basis of race. In Foster, the Supreme Court reiterated the three-step process enumerated in Batson for determining whether a strike is discriminatory, which is as follows:
"First, a defendant must make a prima fa-cie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination.”
Foster, 578 U.S. at -, 136 S.Ct. at 1747 (quoting Snyder, 552 U.S. at 476-77, 128 S.Ct. at 1207 (internal quotation marks and brackets omitted)). The Louisiana Legislature codified Batson by enacting La. C. Cr. P. art. 795(C), which provides as follows:
No peremptory challenges made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror, solely on the basis of race, and a prima facie case supporting that objection is made by the objecting parly, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.

. In Williams I, this court addressed and resolved the defendant's eleven assignments of error.. The Supreme Court granted certiorari . and vacated this court’s judgment solely as to one of those assignments of error — the Batson issue. This court’s determination of the other ten assignments of error addressed in its original opinion was not disturbed and remains the law of the case on remand. See State v. Youngblood, 221 W.Va. 20, 23, 650 S.E.2d 119, 122, n. 1 (2007) (citing Santa Barbara County Water Agency v. All Persons and Parties, 53 Cal.2d 743, 745, 3 Cal.Rptr. 348, 350 P.2d 100 (1960) (noting that "[ijnsofar as the prior opinion of this court affirmed the judgment of the trial court, and passed on the several issues involved other than the validity of the contracts, review was not sought or given by the United States Supreme Court. What was said [on] these issues, is the law of the case ... and is reaffirmed, and need not be restated here.”)). Our discussion in this opinion thus focuses solely on the Batson issue. More precisely, our discussion focuses on the Batson issue as to the three jurors that *1225 the prosecutor was not required to give race neutral reasons for striking; as noted elsewhere, we refer to those three jurors, for ease of reference, as the “Challenged Three Jurors.” !

. The gas station surveillance video shows the victim talking to Mr. Williams and then engaging in what appeared to be an argument with him.

. The record reflects that the defendant is an African-American man.

. As the State points out in its brief on remand, the record thus reflects that “[t]he first panel of veniremen consisted of 16 jurors, of whom 10 were African-American, 5 were Caucasian, and 1 was of indeterminate ethnicity.” The State exercised six of its twelve peremptory challenges to strike six African-American prospective jurors, leaving two African-Americans to be seated as jurors.

.' The State responded to the district court’s request that it supply race-neutral reasons for the record for striking the six potential jurors as follows:
[ (1) Ms. Joseph] was the foreperson on a burglary that came back not guilty. She also was the person that first began the conversation about coercion, in- talking about statements given by defendants. And she also said the testimony and evidence needs to be really strong if she's depending on an eyewitness.
[ (2) Mr. Butler] I believe he was just this month on a criminal trial where he returned, of the four counts, I believe it was three not guilty verdicts. The court — the jury returned three not guilty verdicts. He also, when asked about statements given by defendants, was the first to offer up the possibility that the defendant may have been beaten outside of the interview room prior to confessing.
*1226 [(1) Ms. Villavaso] was the first one to, I guess, mention cognitive ability. She’s a special-ed teacher. She talked about mental ability of a person with regard to them giving a confession.
[ (4) Mr, Marshall] judge, when — you know, speaking about confessions — went into a long conversation about someone may be taking the fall for another person and how one person may have a positive background and a person with a negative background would step up and, essentially, take the fall for the person who’s going somewhere with their life....
[ (5) Mr. Sansom] — well, first, when talking about the possibility of a life sentence and needing proof beyond a reasonable doubt, as opposed to proof beyond all doubt, I believe Ms. Burton said she wanted a higher level of proof. Mr. Sansom at that time began to nod his head in agreement with — I believe it was Miss Burton.
He was also on the case with Mr. Butler, where there were four counts and there were three not guilty verdicts on four counts....
[ (6) Mr. Davis] ... he — well, first of all, there was a point where I thought him and [co-prosecutor] were about to engage in an argument.... And had somewhat bad body language throughout after that interaction with [the co-prosecutor]. He went on to kind of talk about confessions.... And if they have a certain mental state and they're tired and they get drilled mentally, then they would just go ahead and confess to something that they didn't do.

. See also State v. Handon, 06-0131, p. 4, n, 1 (La.App. 1 Cir. 12/28/06), 952 So.2d 53, 57 (noting that "[t]he discretion afforded to a trial court by LSA-C.Cr.P. art. 795(C) to overrule a Batson objection, following the making of a prima facie-case supporting the objection, without requiring the state to set forth its reasons for a challenged peremptory strike may be at odds with Miller-El v. Dretke, 545 U.S. 231, 252, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196 (2005). State v. Snyder, 98-1078 (La.9/6/06); 942 So.2d 484, 490, n. 9.”).

. Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005).

. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).

. In Hernandez, the Supreme Court held that ”[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and- the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.” 500 U.S. at 359, 111 S.Ct. at 1866.

. The three-step process is set forth in footnote one of this opinion.

. In his dissenting opinion in Flowers, Justice Alito noted that the Supreme Court in Foster based its decision on "substantial, case-specific evidence” and concluded that "the prosecution’s proffered explanations for striking black prospective jurors could not be credited.” Flowers, 579 U.S. at -, 136 S.Ct. at 2159 (Alito, J., dissenting). Summarizing that case-specific evidence, the dissenting opinion stated:
[EJvidence of racial bias in Foster included the following facts revealed to be a part of the prosecution's jury selection file, which the Court held undermined the prosecution’s defense of its strikes: copies of a jury venire list highlighting the names of black jurors; a draft affidavit from a prosecution investigator ranking black potential jurors; notes identifying black prospective jurors as "B# 1,” "B# 2,” and “B# 3”; notes suggesting that the prosecution marked “N” (for "no”) next to the names of all black prospective jurors; a “definite NO's" list that included the names of all black prospective jurors; a document relating to one juror with notes about the Church of Christ that stated "NO. No Black Church”; the questionnaires filled out by jurors, in which the race of black prospective jurors was circled.... [Foster,] 136 S.Ct. at 1744 (majority opinion). But this overwhelming evidence of race consciousness was not the end of the Court's analysis in Foster. The Court also discussed evidence that the prosecution's stated reasons for striking black jurors were inconsistent and malleable. The prosecution’s various rationales for its strikes "ha[d] no grounding in fact,” were "contradicted by the record,” and simply "cannot be credited,” according to the Court_ [Foster,] 136 S.Ct. at 1749, 1750, 1751. Some of the purported reasons for striking black prospective jurors "shifted over time” and could not withstand close scrutiny.... [Foster,] 136 S.Ct. at 1751. And other reasons, "while not explicitly contradicted by the record, [wejre difficult to credit” in light of the way in which the State treated similarly situated white jurors.... [Foster,] 136 S.Ct. at 1750.
Id., 579 U.S. at -, 136 S.Ct. at 2158-59.

. In Elie, the trial court orally reasoned as follows:
Well, just let me say this: I am concerned the state has challenged eight African-Americans, black jurors. I’m not saying that that’s a valid Batson challenge, but I do believe it at least gets us-as you say, Mr. Traylor, bottom numbers, it gets us to (sic) past the threshold. So I am going to the next stage. I would like for you to explain your race-neutral reasons for challenging the jurors. And I will assist you in that regard because there are several to me that were obvious. One of which is Ms. Kathleen Cage, Ms. Linda Tyler, and Mr. Ger-maine Jacobs. So I will accept the race-neutral reasons for the three of them. I will ask you to give me a race-neutral reason for Dimitria Johnson, Ylanda Jordan!,] Tremayne King, Marilyn Sterling, and Gloria Zeno.
State v. Elie, 04-1610, pp. 4-5 (La.App. 1 Cir. 3/24/05), 899 So.2d 689, 693, rev’d, 05-1569 (La.7/10/06), 936 So.2d 791.

. The point in the proceedings Mr. Williams was addressing was after the district court asked the prosecutor to supply race neutral reasons for two of the five jurors struck in the *1232 second voir dire panel, and the prosecutor complied with, that request.

. Relevant numeric evidence that courts have considered includes the following: "[i] the percentage of strikes directed against members of a particular group;” "[ii] the percentage of a particular group removed from the venire by the challenged strikes;" and “[iii] a comparison of the percentage of a group’s representation in the venire to its representation on the jury.” Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir.2007).

. Relevant non-numeric evidence that courts have considered includes the following: "[i] the striking party’s questions and statements during the voir dire;” "[ii] whether the striking party had unused peremptory challenges through which he or she could have eliminated more members of the allegedly targeted group;” "[iii] apparent non-discriminatory reasons for striking potential jurors based on their voir dire answers;” and “[iv] whether similarly situated jurors from outside the allegedly targeted group were permitted to serve.” Aspen, 480 F.3d at 577.

. Although the Miller-El factors were discussed in the context of a step three Batson analysis, such factors presumptively apply to step one’s lighter burden for proving an inference of discrimination. Mikal C. Watts & Emily C. Jeffcott, A Primer on Batson, Including Discussion of Johnson v. California, Miller-El v. Dretke, Rice v. Collins, & Snyder v. Louisiana, 42 St. Mary’s L.J. 337, 350-54 *1234 (2011) (citing Miller-El, supra, which emphasized the need to look at all relevant circumstances in step one and step three of the Batson analysis). The other two Miller-El factors, which are inapposite here, are a history of systematically excluding jurors on account of race and the use of a jury shuffle. The jury shuffle factor considered in Miller-El arose from the Texas procedural rule that permits a party to “shuffle” the venire panel before voir dire begins.

. See also Duncan, 99-2615 at p. 14, 802 So.2d at 545 (quoting State v. Green, 94-0887, p. 24 (La.5/22/95), 655 So.2d 272, 288) (noting that a non-exclusive enumeration of such facts is as follows: "a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor [during voir dire] which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.”).

. As noted elsewhere, the Louisiana Supreme Court in Holand reversed this court’s decision in an unpublished per curiam.

. Establishing a prima facie case is not limited to a establishing a pattern; the jurisprudence is clear that striking even a single juror for discriminatory reasons is sufficient to establish a Batson violation. Foster, supra.

. Nor does this one fact establish that the stricken jurors had nothing in common but their race. Moreover, as noted elsewhere, the record reflects that Ms, Ballard also responded to the voir, dire question regarding prior jury service that she had been on a prior jury, but she could not recall any of the details. The record further reflects that Ms. Ballard stated that her daughter was "an intern for a lawyer” and that her daughter was "back and forth in the courtroom,”

. As noted, Mr. Williams, in his original brief in Williams I, conceded that the district court, at this point, found that he had failed to make a prima facie showing of purposeful discrimination.