# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-317

**STATE OF LOUISIANA**

**VERSUS**

**JOEY RAY DEVILLE**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 19-1633
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHARON DARVILLE WILSON
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**Bruce Gerard Whittaker**
**Capitol Defense Project**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 595-8965**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Joey Ray Deville**

**Honorable J. Reed Walters, District Attorney**
**Twenty-Eighth Judicial District Attorney**
**P. O. Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**Steven P. Kendrick**
**Assistant District Attorney**
**P. O. Box 1889**
**Jena, LA 71342**
**(318) 992-4107**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**WILSON, Judge.**

A jury found Defendant, Joey Ray Deville, guilty of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. During voir dire, Mr. Deville raised a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), challenge of the State's back strike of a black potential juror which the trial court denied. Mr. Deville now appeals. For the reasons expressed below, we affirm the judgment of the trial court.

## I.

## ISSUES

In this appeal we must decide whether the trial court erred in not finding the defense made a prima facie showing in the first step of the *Batson* challenge to the State's peremptory strike of Potential Juror Lucrettia Wallace.

## II.

## FACTS AND PROCEDURAL HISTORY

In 2019, Mr. Deville was caught on camera trespassing at a hunting club in Lasalle Parish. The photo from the camera depicted Mr. Deville holding what appeared to be a rifle. A search warrant was obtained for Mr. Deville's residence on December 5, 2019. A .22 caliber rifle was found in a gun cabinet in a bedroom, and additional firearms were found in a refrigerator used as a gun cabinet in a nearby shed. On June 14, 2021, Mr. Deville was charged by bill of information with possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. Mr. Deville entered a plea of not guilty and proceeded to trial on November 16, 2021. At trial, Mr. Deville was found guilty as charged by a unanimous jury. Mr. Deville filed a motion for post-verdict judgment of acquittal. The motion was heard on January 25, 2022, and denied by the trial court. The same day, Mr. Deville was

sentenced to twelve years at hard labor with the Department of Corrections. On January 18, 2022, Mr. Deville filed a motion to reconsider sentence which was denied by the trial court on May 3, 2022. Mr. Deville now appeals asserting a single assignment of error.

III.

## LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent. The record indicates that Mr. Deville was sentenced on the same day that his motion for post-verdict judgment of acquittal was denied. Louisiana Code of Criminal Procedure Article 873 provides:

> If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

Article 873 does not specifically mention a motion for post-verdict judgment of acquittal, and there is some discrepancy among the courts as to whether the delay is required after denial of such a motion. This court has previously held that the lack of the delay is an error patent. *See State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La. 11/22/06); 942 So.2d 553. However, the court also found that the error was harmless since the defendant had not alleged any prejudice by the trial court's failure to delay sentencing and had not challenged the sentence on appeal. *Id*. In the instant case, Mr. Deville neither

challenges the sentence imposed or claims he was prejudiced by the lack of delay. Thus, the error was harmless.

## BATSON CHALLENGE

On appeal, Mr. Deville asserts that the trial court erred in not finding that he made a prima facie showing in the first step of the *Batson* challenge to the state's peremptory strike of Potential Juror Lucrettia Wallace. Mr. Deville argues that the trial court permitted the state to use a peremptory challenge to back-strike the only black juror from the panel without requiring the state to provide a race-neutral reason, and in so doing applied an incorrect legal standard. He submits the case only involves the first step of the *Batson* process because the court did not direct the State to give a race-neutral reason nor did the State provide such a reason. As such, he further argues that the record is insufficient to weigh the strength of the challenge, and the case should be reversed, and a new trial ordered.

The United States Supreme Court has held that the use of peremptory challenges to exclude potential jurors based upon their race violates the Equal Protection Clause. *Batson*, 476 U.S. 79. The holding in *Batson* was adopted by the Louisiana Supreme Court in *State v. Collier*, 553 So.2d 815 (La.1989) and has been codified by the legislature in La.Code Crim.P. art. 795. When asserting a *Batson* challenge, the defendant must make a prima facie showing of discrimination in the use of the strike. If a prima facie case is established, the burden shifts to the opposite party to articulate a race-neutral explanation for the strike. The trial court must then determine whether the party challenging the strike has carried the ultimate burden of proving purposeful discrimination. *See Batson*, 476 U.S. 79.

To establish a prima facie case, the defendant must show: (1) the prosecutor's challenge was directed at a member of a cognizable group; (2) the

3

challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venireperson on account of his being a member of that group. *Id*. For a *Batson* challenge to succeed, a racially discriminatory result alone is insufficient. Rather, the result must be traced to a racially discriminatory purpose. The sole focus of the *Batson* inquiry is the intent of the prosecutor at the time he exercised his peremptory strikes. *Id.*

In the instant case, the only issue before the court is whether defendant met his burden of proof under the first *Batson* factor and established a prima facie case of purposeful discrimination in the State's use of peremptory strikes. "If the trial court determines that the challenging party. . . failed to establish the threshold requirement of a prima facie case (step one), the analysis is at an end; and the burden of production is never shifted to the challenged attorney. . . to articulate neutral reasons (step two)." *State v. Duncan*, 99-2615, p. 12 (La. 10/16/01), 802 So.2d 533, 544 (footnote omitted).

The first two elements of a prima facie case are undisputed. The prosecutor's peremptory challenge was directed at a member of a cognizable racial group, African Americans, and the challenge was not for cause. Thus, the sole issue is whether Mr. Deville established sufficient circumstances to warrant an inference of a discriminatory purpose for the State's strike.

In discussing the factors considered for determining whether a defendant has made a prima facie case, the Louisiana Supreme Court has explained:

> In *Batson,* the Court provided two illustrative examples of factors the trial court should consider in deciding whether a defendant has made the requisite showing. A "pattern" of strikes against a cognizable group of jurors in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and

4

in exercising challenges may support or refute an inference of discriminatory purpose. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The Court did not formulate any particular requirements for determining whether a defendant established a prima facie case. Rather, the Court expressed confidence in the trial judges' ability to determine the establishment of a prima facie case. *Id.* Thus, the determination of the type and quantum of proof necessary to establish a prima facie case was left to the lower courts. *Duncan*, 802 So.2d at 545. However, the establishment of a prima facie case is not to be so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination. *Johnson v. California*, 545 U.S. at 170, 125 S.Ct. at 2417. A defendant satisfies *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination occurred. *Id.*

*State v. Sparks*, 88-17, p. 40 (La. 5/11/11), 68 So.3d 435, 470, *cert. denied sub nom.*

*El-Mumit v. Louisiana*, 566 U.S. 908, 132 S.Ct. 1794 (2012).

The first panel of twelve prospective jurors included Potential Juror Lucrettia Wallace, an African American. During voir dire, Ms. Wallace was asked biographical questions along with general questions asked to all prospective jurors seated at the time, and her responses were consistent with the rest of the group. The State directed a total of three questions to Ms. Wallace during the questioning of the first panel. The exchange went as follows:

> THE STATE: Ms. Wallace, do you think it's fair that after someone has gone to trial, been to prison, served their time and got out, that for ten years they can't go hunting with their grandchild?
>
> THE JUROR: No, it ain't fair but it's the law.
>
> THE STATE: Should it be?
>
> THE JUROR: Yeah.

The same question was then asked to other prospective jurors. The State then asked Ms. Wallace the following:

> THE STATE: Ms. Wallace, does city boy get a pass just because he didn't know that night hunting was illegal in Louisiana?
>
> THE JUROR: No.

From the first panel of twelve, the State excused Jennifer Girlinghouse, a white female, by peremptory challenge, and the defense excused Bryon Campbell, a white male. After the voir dire of the second panel concluded, the trial court called for the State to exercise peremptory challenges and the State chose to back strike Ms. Wallace. When the State struck Ms. Wallace, the trial court noted that Ms. Wallace "is a black female." Defense counsel promptly objected, with the following exchange:

> DEFENSE: Correct. I'd object to striking Ms. Wallace.
>
> THE COURT: Grounds?
>
> DEFENSE: We had one black on this panel and the one black has been stricken. It was not for cause and therefore it's a 100% [sic] has been stricken from this panel.
>
> THE COURT: And again, grounds? Are you trying to say it's a *Batson* challenge?
>
> DEFENSE: Yes.
>
> THE COURT: Well, you have to be a little bit more than just one minority. You have to show more of a pattern as opposed to just one. But your objection is noted.

Ms. Wallace was then excused by the court.

During the third panel, the state struck Tina Hosea, a white female, Amy Pardue, a white female, and Aimee Craft, a white female. During the fourth

panel, the State struck Charles Foshee, a white male. The record does not otherwise indicate the racial makeup of the venire, and the makeup of the actual jury is not known.

Mr. Deville argues that the trial court improperly required a pattern of strikes to be shown whereas here the one and only African American was struck. Mr. Deville is correct in that a pattern of strikes is not the sole determinative factor; however, the trial court never stated that a pattern was the only way to establish a prima facie case. Rather, the trial court's reference to a pattern was in response to the only evidence of discrimination posited by Mr. Deville, which was the statement that in striking Ms. Wallace, 100% of the black potential jurors had been stricken. It was the language of the defense which suggested that the challenge was based purely on numbers and having given that as the grounds for the challenge, the trial court determined that was insufficient to show a pattern. In *State v. Rodgers*, 16-14, p. 16 (La.App. 5 Cir. 10/26/16), 202 So.3d 1189, 1199, *writ denied*, 16-2189 (La. 9/15/17), 225 So.3d 479, *and writ denied*, 16-2093 (La. 1/29/18), 235 So.3d 1104 (emphasis added), the fifth circuit provided relevant analysis:

> **The racial makeup of the jury venires and the empaneled jury is not available in the record. However, such information, standing alone, would not establish a prima facie case of discriminatory intent in the State's use of peremptory challenges.** *State v. Duncan*, 99–2615 (La. 10/16/01), 802 So.2d 533, 549. In *Duncan*, the Louisiana Supreme Court reasoned that "[s]uch number games ... are inconsistent with the inherently fact-intense nature of determining whether the prima facie requirement has been satisfied," and that "absolute, per se rules are inconsistent with Batson in which the Court instructed trial courts to consider 'all relevant circumstances.'" *Id*. at 550. Accordingly, a defendant has the burden of establishing facts on the record in support of a prima facie finding of purposeful discrimination. *Id*; *See also State v. Holand*, 11–974 (La. 11/18/11), 125 So.3d 416.

7

Regarding the trial court's first two denials of Defendant's Batson objections, the record is devoid of any indication as to the overall racial makeup of the jury venires or the empaneled jury. Defendant has pointed to no additional evidence of a discriminatory purpose in the State's use of peremptory challenges. Accordingly, we find no error in the trial court's finding that Defendant had not established a prima facie case to shift the burden to the State.

Additionally, in *State v. Williams*, 13-283, pp. 19-21 (La.App. 4 Cir. 9/7/16), 199 So.3d 1222, 1234-35 (emphasis added), the fourth circuit provided the following analysis:

> In contrast to the statistical evidence in *Miller–El [v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029 (2003)], Mr. Williams' statistical evidence consists solely of the fact the State used eleven of its twelve peremptory challenges to strike African-American jurors, which he contended established a pattern. He simply argued, quoting *Foster [v. Chatman*, 578 U.S. 488, 136 S.Ct. 1737 (2016)], that the State's pattern of exclusively challenging African-American jurors "plainly demonstrates a concerted effort to keep black prospective jurors off the jury." Mr. Williams thus failed to provide a context for his statistical-pattern argument.
>
> A similar statistical-pattern argument was made by the defendant in *State v. Holand*, 10-0325 (La.App. 4 Cir. 4/18/11), 64 So.3d 330, *writ granted*, 11–0974 (La.11/18/11), 125 So.3d 416. Finding the defendant's argument persuasive, this court held that "the State's use of ten of its eleven peremptory challenges to strike African-Americans—nine of whom were women—was sufficient to establish a prima facie case of discrimination racial, gender, or both." *Holand,* 10–0325 at p. 16, 64 So.3d at 338–39. Continuing, this court reasoned that "[t]hese numbers alone were sufficient to establish at least 'the inference' that discrimination had occurred." *Id.* Disagreeing, the Louisiana Supreme Court granted the State's writ application and, in an unpublished per curiam, reversed for the following reasons:
>
> > [I]n the present case, it is not possible to determine from the raw number of strikes exercised, without some context, that the circumstances gave rise to a reasonable

8

inference of discriminatory purpose, as was the case in *[State v.] Givens*[, 99–3518 (La.1/17/01), 776 So.2d 443] and [ *State v.] Drake*, [08–1194 (La.1/30/09), 2 So.3d 416] because the strikes resulted in the demonstrable skewing of the racial or gender compositions of the jury.

This Court further emphasized in *Duncan* that it is important for the defendant to come forward with facts, not just numbers alone, when asking the district court to find a prima facie case. *Duncan*, 99–2615 (La.10/16/01), 802 So.2d 533, 544 (citing *Moore*, 895 F.2d at 485); *see also United States v. Dawn*, 897 F.2d 1444, 1448 (8th Cir.1990) ("[A] defendant who requests a prima facie finding of purposeful discrimination is obligated to develop a record, beyond numbers, in support of the asserted violation."). Here, the defendant alleged no additional facts beyond the raw number of strikes and failed to develop the record beyond those numbers.

The jurisprudence thus holds that bare statistics alone, without any context, are insufficient to support a prima facie case of discrimination. See *Duncan*, 99–2615 at p. 14, 802 So.2d at 544; *see also United States v. Chinchilla*, 874 F.2d 695, 698 (9th Cir.1989) (noting that "[t]here is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions."). This is because "the value of numbers alone, without any indication of the race or gender composition of the jury selected or the pool from which it was drawn, is limited at best." *State v. Mason*, 47,642, p. 20 (La.App. 2 Cir. 1/16/13), 109 So.3d 429, 441 (citing *Holand, supra* ).

**Here, Mr. Williams failed to come forward with facts or context, beyond the bare number of African-Americans the prosecutor struck, to develop a record** to support the asserted Batson violation. Indeed, in his brief on remand, he acknowledges that "[t]he record does not contain evidence of the races of any of the jurors questioned, including those who ultimately sat on Mr. Williams's jury." It is thus impossible to make a valid statistical analysis of the stricken jurors. This factor does not support a prima facie case.

9

The fact that the only African American from the first two panels was excluded does not give rise to an inference of discriminatory purpose. As in *Williams*, Mr. Deville failed to come forward with facts or context, beyond the bare number of African Americans struck by the prosecutor. Similar to *Rodgers*, the racial makeup of the jury venires and the empaneled jury is not available in the record in the instant case, but such information, standing alone, does not establish a prima facie case of discriminatory intent. *Rodgers*, 202 So.3d 1189.

While Mr. Deville argues there was no obvious reason to strike Ms. Wallace, he has not referenced any improper questions or statements by the prosecution that would suggest discriminatory intent. In brief, Mr. Deville does imply discrimination by arguing that Ms. Wallace's answers were non-controversial, and she was stricken, yet the responses of Mr. Campbell, a white male, contained reservations about fairness, and he was accepted. This argument, however, does not pass scrutiny. The trial court engaged in a back-and-forth peremptory challenge system. When the state selected its first strike of Ms. Girlinghouse, the trial court then asked the defense who in turn struck Mr. Campbell. This exchange did not provide the State with an opportunity to strike Mr. Campbell, so whether the State would have struck him is unknown.

At all times the burden of production was on Mr. Deville, and the trial court did not find that the sum of the proffered facts gave rise to an inference of discriminatory purpose. *Batson* accords a trial court broad discretion in this regard, and we find the trial court did not err. Thus, we find that Mr. Deville failed to establish a prima facie case of racial discrimination, and his *Batson* challenge was properly denied at the first stage.

10

IV.

## **CONCLUSION**

For the foregoing reasons, we find the trial court did not commit legal error in finding that Mr. Deville failed to make a prima facie showing of discriminatory intent in striking Potential Juror Wallace. We affirm the conviction of the trial court.

**AFFIRMED.**