# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-01003-SCT

*CHRISTOPHER SMITH a/k/a CHRISTOPHER MICHAEL SMITH*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2021 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | JOHN M. COLETTE |
| | JEFFREY MATTHEW GRAVES |
| | ALEXANDER C. MARTIN |
| | PATRICK EARL BEASLEY |
| | DANIELLA MARIE SHORTER |
| | M. LAMAR ARRINGTON, JR. |
| | SHERWOOD ALEXANDER COLETTE |
| | ANDREW JAMES WILLIAMS |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/13/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. A Copiah County jury found Christopher Smith guilty of first-degree murder for the death of Nakisa Benson, and the trial court sentenced him to life imprisonment.

Subsequently, Smith appealed his conviction; the Court of Appeals affirmed. On writ of *certiorari*, Smith asks the Court to remand his case for another ***Batson***[1] hearing on Jurors 10 and 16. Finding no error, we hereby affirm the judgments of the Court of Appeals and of the Copiah County Circuit Court.

## BACKGROUND

¶2.     On May 13, 2013, Nakisa Benson filed a domestic violence report against Christopher Smith. In her report, Benson stated that she believed Smith would inevitably kill her. On August 20, 2013, Benson was shot and killed. Due to Benson's police report and information provided by her family, law enforcement pursued Smith as the primary suspect, and he was arrested shortly thereafter on August 23, 2013. Smith was indicted on November 6, 2013, and formally charged with first-degree murder. While Smith was initially found incompetent to stand trial and committed to the Mississippi State Hospital at Whitfield on October 20, 2016, he was later deemed competent to stand trial. Smith's trial was set for August 18, 2021, in the Copiah County Circuit Court.

¶3.     During the jury selection process, Smith exercised ten peremptory strikes on potential jurors, nine of whom were white. The State raised a reverse-***Batson*** challenge with respect to the struck white jurors. The circuit judge conducted a ***Batson*** hearing. First, Smith's race-neutral reason for striking Juror 8 was his age of sixty-three; counsel also cited Juror 8's occupation as a welder, stating "I just didn't think he could follow or be concerned – this case is going to be about a lot of medical." In response, the State pointed out that Smith had

---

[1] ***Batson v. Kentucky***, 476 U.S. 79 (1986).

not attempted to strike another black juror just one year younger who worked in a kitchen. The circuit judge disallowed the strike.

¶4. Smith's counsel's stated reason for striking Juror 10 was as follows:

> I believe our concern with [Juror 10] was that he was retired and says academy something. Again, I can't read it. Not because of his race. He was retired. I'm not quite sure. At the time I made the strike in my notes on the sheet was a teacher in the Crystal Springs area, obviously about the time this thing would have occurred eight years ago. That's my concern with [Juror 10].

¶5. Based on that response, the circuit judge disallowed the strike. Smith also struck Juror 16, a sixty-four-year-old white male, and his counsel gave the following reason:

> Yes, [Juror 16] is a cattle farmer, 64 years old, 20 years, farmed his whole life, white male. My client is a black male. I don't think there's a whole lot of consideration for my client. He has a totally different lifestyle. Cattle farmer. It concerns me that he owns a lot of property. I don't see him relating to my client whatsoever, race irrespective.

The circuit judge immediately restored Juror 16 to the venire.

¶6. Smith's counsel also sought to strike Juror 30. After it became apparent that counsel's reason for striking Juror 30 was based on a mistake, counsel withdrew the strike.

¶7. Finally, the State contended that Smith's attorney struck Juror 39 on racial grounds, as Juror 39 was a sixty-two-year-old white male, the same age as other black jurors that the defense accepted. Smith's counsel admitted as much, responding, "I'll confess that one," and the circuit judge restored Juror 39 to the venire.

¶8. The jury rendered a guilty verdict, and Smith was sentenced to life imprisonment. Smith subsequently appealed, and the case was assigned to the Court of Appeals, in which Smith argued that the trial court committed reversible error by (1) admitting certain autopsy

photographs and (2) overruling five of his peremptory strikes. *Smith v. State*, No. 2021-KA-01003-COA, 2023 WL 2884723, at *2 (¶ 8) (Miss. Ct. App. Apr. 11, 2023). The Court of Appeals found no error and affirmed. *Id.* Thereafter, Smith filed a petition for writ of *certiorari*, contending only that the Court of Appeals erred in its *Batson* analysis with respect to Jurors 10 and 16; he asks the Court to remand the case for a proper *Batson* hearing. Thus, the primary issue before us is whether the Copiah County Circuit Court erred in its *Batson* analysis of Jurors 10 and 16 to necessitate remand for a new *Batson* hearing.

## STANDARD OF REVIEW

¶9. The Court reviews a *Batson* challenge as follows:

> We give great deference to the trial court's findings of whether or not a peremptory challenge was race neutral . . . . Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate deference on appeal . . . . Indeed, we will not overrule a trial court on a *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence . . . .

*Lynch v. State*, 877 So. 2d 1254, 1270 (¶ 46) (Miss. 2004) (alterations in original) (quoting *Walker v. State*, 815 So. 2d 1209, 1214 (Miss. 2002).

## DISCUSSION

¶10. In his petition for writ of *certiorari*, Smith contends that the trial judge did not conduct a proper *Batson* analysis for the peremptory strikes of Jurors 10 and 16 because he did not require the State to prove Smith's proffered race-neutral reasons were pretexts for discrimination. Smith does not challenge the trial court's decisions as to any other jurors on *certiorari*. Based on his contention that the trial court conducted a flawed *Batson* hearing,

4

Smith requests remand for a new ***Batson*** hearing on Jurors 10 and 16. For the reasons set forth below, we affirm the Copiah County Circuit Court's ruling, and we thereby deny Smith's request for a ***Batson*** hearing on Jurors 10 and 16.

¶11. In ***Batson***, 476 U.S. at 84, the United States Supreme Court reaffirmed that a state violates the Equal Protection Clause by excluding jurors solely on racial grounds. U.S. Const. amend. XIV. The United States Supreme Court has further declared that the Constitution similarly prohibits defendants from exercising peremptory strikes based on race and elaborated as follows:

> Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination.
>
> But "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." One of the goals of our jury system is "to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair."
>
> . . . .
>
> . . . We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either race of the juror or the racial stereotypes held by the party.

***Georgia v. McCollum***, 505 U.S. 42, 49, 59 (1992) (citations omitted).

¶12. "To safeguard against racial discrimination in jury selection, the United States Supreme Court in ***Batson*** established a three-step process." ***H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.***, 232 So. 3d 117, 123 (¶ 14) (Miss. 2016) (citing ***Pitchford v. State***, 45 So. 3d 216, 224 (¶ 13) (Miss. 2010)). First, the objecting party bears the burden of

5

establishing a prima facie case that the peremptory strike was race-based. *Id.* If a such a prima facie case is made, the burden shifts to the striking party, and the second step requires that party to provide a race-neutral reason for the strike. *Id.* As the Court of Appeals explained, "[t]he striking party meets its burden by providing a facially valid race-neutral reason for the strike." *Smith*, 2023 WL 2884723, at *3 (¶ 13). "Third, after the striking party offers its race-neutral explanation, the court must determine if the objecting party met its burden to prove purposeful discrimination in the exercise of the peremptory strike—that the stated reason for the strike was merely a pretext for discrimination." *Id.* (¶ 11) (quoting *Miles v. State*, 346 So. 3d 840, 842 (¶ 4) (Miss. 2022)). Notably, the United States Supreme Court has "not articulate[d] a particular means of accomplishing the third step." *Pruitt v. State*, 986 So. 2d 940, 946 (¶ 20) (Miss. 2008) (citing *Batson*, 476 U.S. at 88-89)).

¶13. Permissible race-neutral reasons include "age, demeanor, marital status, single with children, prosecutor distrusted juror, education background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was being hostile to being in court, juror was late, [and] short term employment." *Miles*, 346 So. 3d at 842 (¶ 4) (alteration in original) (emphasis omitted) (internal quotation marks omitted) (quoting *Hardison v. State*, 94 So. 3d 1092, 1097 (Miss. 2012)).

¶14. In the case *sub judice*, Smith contends that the circuit judge did not perform a proper *Batson* analysis on Jurors 10 and 16; specifically, Smith petitions the Court to remand for another *Batson* hearing on Jurors 10 and 16 because the circuit court placed them back into

6

the jury venire without performing any analysis on whether his articulated race-neutral reasons were pretext.

¶15. With respect to the ***Batson*** analysis of Juror 8, as detailed above, the defense's articulated race-neutral reason was Juror 8's age of sixty-three and his profession as a welder. The State demonstrated that the proffered explanation was pretext because Smith did not strike a black juror just one year younger who worked in a kitchen. Thus, the record shows that the circuit judge found that defense counsel's proffered race-neutral reason was pretext and disallowed the strike.

¶16. The attorneys and the trial judge immediately began discussing Juror 10. Again, Smith's counsel contended that he struck Juror 10 on the same grounds as Juror 8, *i.e.*, age and profession. Smith's counsel purported that Juror 10 was of retirement age and was a "teacher" because his information indicated that he was employed at "academy." A review of Juror 10's information card, however, showed his place of employment was Academy Sports & Outdoors, not a school, and as mentioned above, the State proved age to be a pretext because Smith did not strike black jurors of a similar age. Therefore, Smith's proffered race-neutral reasons for striking Juror 10 were proved pretextual with respect to age and incorrect with respect to occupation.

¶17. Without question, "trial court judges *should* make on-the-record factual determinations of race-neutral reasons in cases involving ***Batson*** challenges." ***Pruitt***, 986 So. 2d at 946 (¶ 21) (internal quotation marks omitted) (quoting ***Burnett v. Fulton***, 854 So. 2d 1010, 1014 (Miss. 2003)). We will not remand for such a purpose alone, however, when

7

we are "fully capable of balancing the *Batson* factors in cases such as this one." *Id.* at 946-47 (¶ 21) (citing *Burnett*, 854 So. 2d at 1016). Indeed, "[c]ontinued remand of such cases only wastes the trial court's limited resources and acts to further delay justice." *Id.*

¶18. The argument that the defendant's strike of Juror 8 was pretext, *i.e.*, age and profession, also applied to Juror 10. Just moments before, the State had shown that the defendant's age and profession were pretext, and we see no need to remand for a hearing to require the State to make the same argument the trial judge has already accepted.

¶19. Moreover, we agree with the Court of Appeals that the trial judge found that Smith's use of incorrect employment information showed pretext, and "[r]emanding this case as to Juror 10 would produce no new information or change the legal result." *Smith*, 2023 WL 2884723, at *7 (¶ 24). Counsel's misrepresentations of the record can be considered to indicate that a proffered race-neutral reason is pretext. *Flowers v. Mississippi*, 588 U.S. 284, 302 (2019). Accordingly, we see no reason to remand for a hearing to require the State to make the same argument the trial judge has already accepted.

¶20. Smith also seeks remand for additional findings on Juror 16. In short, racial animus is clearly evident in Smith's proffered reason for striking Juror 16. Counsel for Smith stated that he did not want a white juror serving in the trial because his client was black. Many matters of record that come before the Court are not straightforward and clear, but the instant one truly is. As noted above, Smith's counsel told the trial court in part, "[Juror 16] is a cattle farmer, 64 years old, 20 years, farmed his whole life, *white male. My client is a black male.*" (Emphasis added.) The assertion by Smith that the proffered reason was race-neutral,

8

thus warranting a showing of pretext, is baffling; "discriminatory intent is inherent in the proffered reason[.]" **Miles**, 346 So. 3d at 843 (¶ 8) (citing **Hardison**, 94 So. 3d at 1100. The Court again sees no need to remand for additional findings when Smith's counsel stated that Juror 16's race was part of the reason for striking him. The trial court need not look into pretext when counsel cannot give a race-neutral reason for the strike. *See, e.g.*, **Miles**, 346 So. 3d at 842 (¶ 4) (the need to prove pretext arises after a race-neutral reason is given).

¶21.  Smith's attorney showed a clear pattern of striking jurors because of their race. Counsel stated on the record that he struck Juror 16 at least in part because he did not want a white juror, and counsel conceded on the record to the trial court that he had no race-neutral reason for striking Juror 39. In other words, counsel admitted he struck Juror 39 for his race. If, in **Flowers**, the prosecutor's history of race-related strikes in earlier trials informed the United States Supreme Court's holding, then certainly defense counsel's pattern of behavior during *voir dire* before the trial judge in today's case is informative. **Flowers**, 588 U.S. at 304-07; *see also* **Foster v. Chatman**, 578 U.S. 488, 513-14 (2016) (contents of prosecutors file that focused on jurors' race "belie the State's claim that it exercised its strikes in a 'color-blind' manner.") Here, we need not look to the history of past trials or notes obtained from the attorney; defense counsel's pattern of striking jurors for their race is evident from his choice of words during the trial court's **Batson** hearing.

¶22.  With such a clear pattern of race-based strikes present in the record, we hold that the trial court's ruling finds more than sufficient support in the record. Accordingly, in the

absence of any error and according the appropriate deference due the Copiah County Circuit Court, we affirm.

CONCLUSION

¶23. The Court affirms the judgments of the Court of Appeals and of the Copiah County Circuit Court.

¶24. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.; ISHEE, J., JOINS IN PART.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶25. This Court is not being prevailed upon to consider reversing a conviction based on *Batson*[2]; rather, we must consider merely whether to remand this case for a *Batson* hearing when it is undisputed that the trial court failed to conduct a proper *Batson* analysis for two struck jurors it placed back into the jury pool. But in this case, overzealously applying *Batson* would protect white jurors from being struck, and would benefit the State. So in an utterly predictable holding, this Court moves heaven and earth to apply *Batson* protections, allowing the trial court to use *Batson* protections without a proper *Batson* analysis, protecting white jurors no matter the failure to adhere to proper procedure; yet, this Court seems to forget the existence of *Batson* protections each time it is called upon to use those protections for the benefit of Black jurors.[3] Because the trial court failed to conduct a full

---

[2]***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[3]In ***Clark v. State***, I noted that this Court had examined 119 substantive, race-based *Batson* challenges, 106 involving strikes of Black jurors and sixteen involving strikes of

10

***Batson*** analysis with regard to Juror 10, this Court should remand this case to the trial court

for a ***Batson*** hearing.  Accordingly, I respectfully dissent.

### 1.    *Proper Batson Analysis Process*

¶26.    In ***Batson***, the United States Supreme Court held that the prosecution is not allowed

to use its peremptory strikes in a discriminatory manner.  ***Batson***, 476 U.S. 79.  The holding

also applies to defendants, in which case, such a challenge to the defense's peremptory

---

white jurors (the total numbers being slightly disparate because three cases involved both). ***Clark v. State***, 343 So. 3d 943, 1016 n.12 (King, P.J., dissenting).  In the 106 cases in which the trial court found *no **Batson*** violation for the strikes of *Black* jurors, this Court had affirmed 101 of them.  In the fourteen cases in which the trial court *did* find a ***Batson*** violation for the strikes of *white* jurors, this Court had affirmed twelve of them.  This Court has now decided 121 substantive, race-based ***Batson*** challenges, 108 involving strikes of Black jurors and sixteen involving strikes of white jurors.  *See* Appendix A.  In the 108 cases in which the trial court found *no **Batson*** violation for the strikes of *Black* jurors, this Court has affirmed 103 of them.  In the fourteen cases in which the trial court *did* find a ***Batson*** violation for the strikes of *white* jurors, this Court has affirmed twelve of them. Thus, out of sixteen cases involving white jurors, this Court found ***Batson*** protections should apply to white jurors in 75 percent of those cases.  Yet, when it comes to whether ***Batson*** protections apply to Black jurors, this Court has found that they do not in 95 percent of the cases.  Perhaps there is no better indication of the majority's attitude in the application of ***Batson*** than the case of ***Flowers v. Mississippi***.  ***Flowers v. State***, 240 So. 3d 1082 (Miss. 2017), *reversed by **Flowers v. Mississippi***, 588 U.S. 284, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019); ***Flowers v. State***, 158 So. 3d 1009 (Miss. 2014).  On November 13, 2014, a majority of this Court found no ***Batson*** violation and affirmed Flowers's conviction.  ***Flowers***, 158 So. 3d 1009.  Upon appeal, the United States Supreme Court returned the case to this Court and strongly urged this Court to reconsider the affirmance of Flowers's conviction based on the ***Batson*** issues raised. ***Flowers v. Mississippi***, 579 U.S. 913, 136 S. Ct. 2157, 195 L. Ed. 2d 817 (2016).  Notwithstanding the directives of the United States Supreme Court, the majority defiantly found no violation of ***Batson*** and yet again affirmed Flowers's conviction. ***Flowers***, 240 So. 3d 1082.  Upon the second appeal by Flowers, the United States Supreme Court held that this Court had improperly applied ***Batson***, and it reversed Flowers's conviction. ***Flowers***, 588 U.S. 284.  Given this Court's history in the application of ***Batson***, it is difficult to credit this Court's sudden strident adherence to ***Batson*** as due to anything but the fact that, in this case, ***Batson*** protects white jurors.

11

strikes as discriminatory is termed a reverse-*Batson* challenge. *Miles v. State*, 346 So. 3d 840, 842 (Miss. 2022).

¶27. *Batson* established a three-step process for courts to use in determining whether the use of a peremptory strike is discriminatory. *Miles*, 346 So. 3d at 842. First, the party objecting to the strike must make a prima facie case that race was the reason for the strike. *Id.* (quoting *H.A.S. Elec. Contractors, Inc. v. Hemphill Constr. Co.*, 232 So. 3d 117, 123 (Miss. 2016)). Second, if a prima facie showing is made, the party using the strike must state a facially race-neutral reason for the strike. *Id.* (quoting *H.A.S.*, 232 So. 3d at 123). Third, the court must determine whether the objecting party met its burden to prove purposeful discrimination in using the strike, or, in other words, that the objecting party proved that the stated reason for the strike was a pretext for discrimination. *Id.* (quoting *H.A.S.*, 232 So. 3d at 123). This Court has accepted many race-neutral reasons, such as "age, demeanor, marital status, single with children, *prosecutor distrusted juror*, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, [and] short term employment." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Hardison v. State*, 94 So. 3d 1092, 1099 (Miss. 2012)).

¶28. When the party using the strike presents a facially race-neutral reason for the strike, the court must shift the burden of proof to the opposing party to prove pretext. *Id.* at 843-44. When a trial court skips the analysis required in the third step, it amounts to error. *Id.* at 844.

12

In addition to the standard requiring the opposing party to prove pretext, the trial court requesting that party's proof of pretext also allows the party exercising the strike to rebut any argument that the race-neutral reason is pretext. ***Id.***

¶29. The proper remedy for a trial court erroneously denying a peremptory strike when the juror ended up on the jury is a new trial. ***Id.*** at 846. But when a trial court neglects to complete the three-step ***Batson*** analysis in a case where the trial court ultimately denies the defendant a peremptory strike, appellate courts cannot properly ascertain whether the denial of the strike was proper or erroneous. ***Miles***, 346 So. 3d at 845-46. Thus, the proper remedy when the trial court does not complete the ***Batson*** analysis is to remand for a ***Batson*** hearing at which the analysis is completed. ***Miles***, 346 So. 3d at 845-46. The hearing is limited to the record as it existed at the time of the original incomplete ***Batson*** analysis. ***Miles***, 346 So. 3d at 846. "After the hearing, an appellate court can review the trial court's ***Batson*** rulings to determine whether they were clearly erroneous or against the overwhelming weight of the evidence." ***Miles***, 346 So. 3d at 846 (citing ***Strickland v. State***, 980 So. 2d 908, 916 (Miss. 2008)).

### 2.    *Juror 10*

¶30. The trial court did not complete the ***Batson*** analysis for Juror 10; the Court of Appeals recognized that "[t]he trial judge did not articulate specific findings of pretext for Juror 10." ***Smith v. State***, No. 2021-KA-01003-COA, 2023 WL 2884723, at *6 (Miss. Ct. App. Apr. 11, 2023). The following colloquy occurred regarding Juror 10:

13

| | |
|---|---|
| [STATE]: | . . . Our notes show that [Juror 10] is of the white race and he didn't - - we don't have anything that he made any comment whatsover. |
| [DEFENSE]: | I believe our concern with [Juror 10] was that he was retired and says academy something. Again, I can't read it. Not because of his race. He was retired. . . . At the time I made the strike in my notes on the sheet was a teacher in the Crystal Springs area, obviously about the time this thing would have occurred eight years ago. That's my concern with [Juror 10]. |
| THE COURT: | Juror Number 10 - - D-3 will be placed back on the jury venire. What is your next one? |

The defense articulated a race-neutral reason for its strike of Juror 10—both that he was retired and a former teacher. The State made absolutely no showing that this was pretext, nor did the trial court perform any analysis whatsoever that this was pretext.

¶31. The majority and the Court of Appeals rely on *Pruitt v. State* for the proposition that a trial court need not complete the *Batson* analysis. Maj. Op. ¶ 17; *Smith*, 2023 WL 2884723, at *7 (citing *Pruitt v. State*, 986 So. 2d 940 (Miss. 2008)). While *Miles* and *Pruitt* appear contradictory, *Pruitt* is factually distinguishable, and its holding also mandates remand in this case. In *Pruitt*, the State struck three Black jurors and Pruitt raised a *Batson* challenge. *Pruitt*, 986 So. 2d at 942. The trial court found no prima facie case of discrimination, but nonetheless moved on to the second prong of the *Batson* analysis. *Id.* The State offered race-neutral reasons for the strikes, and the trial court accepted the reasons without making specific findings under the third prong of the *Batson* analysis. *Id.* However, it appears that Pruitt was able to make arguments to the trial court regarding why

14

the strikes were nonetheless pretextual.  *Id.* at 944.  "Pruitt argued that no juror was questioned at voir dire about the characteristics for which she was struck[,]" "that there is a lack of record support for whether the State examined the officers' allegations that these jurors were related to individuals formerly prosecuted in that county[,]" and "that living in a high-crime area was a group-based trait."  *Id.*  The Court noted that the reasons given for the strikes had been recognized by this Court as race-neutral explanations for strikes.  *Id.* at 947.   The Court emphasized that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike[.]"  *Id.* (internal quotation marks omitted) (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)).  The Court concluded that "we have examined the evidence put forth by Pruitt at trial and find that Pruitt failed to meet his burden."  *Id.*

¶32.    As stated in *Pruitt*, the State in this case, as the opponent of the strike, has the ultimate burden of persuasion.  The State only offered that Juror 10 made no comments,[4] a much less thorough showing than the showing held inadequate to meet the burden of persuasion in *Pruitt*.  Smith offered employment history as a race-neutral reason for the strike, and this Court has recognized employment history as a valid race-neutral explanation.  *Miles*, 346 So. 3d at 842.  With nothing more, under *Pruitt*, the State failed to meet its burden.  But because

---

[4]Defendants have argued that the State's failure to question a juror and/or a juror's lack of comment on an issue should be an indication of pretext, but this Court has held that the lack of comment is not an indication of pretext as applied to the State.  *See Clark v. State*, 343 So. 3d 943 (Miss. 2022); *Jones v. State*, 252 So. 3d 574 (Miss. 2018).  The same standard should apply to defendants.

the trial court completely skipped the third prong of the *Batson* analysis, *Miles* clearly requires that this Court remand for a hearing. *Miles*, 346 So. 3d at 844-47.

¶33. The majority and the Court of Appeals secondarily find that the strike of Juror 10 was improper because it credited the State's argument, made for the first time at oral argument to the Court of Appeals, that Smith made a mistake in ascertaining Juror 10's employment. Maj. Op. ¶ 14, 16; *Smith*, 2023 WL 2884723, at *7. That the majority and Court of Appeals affirmatively make this finding is problematic. First, appellate courts generally should not consider arguments made for the first time on appeal. *Anderson v. LaVere*, 136 So. 3d 404, 409-10 (Miss. 2014). The State failed to make this argument in the trial court. Additionally, the record reflects that defense counsel affirmatively stated that he was struggling to read Juror 10's juror information card, so this argument regarding what the information card said or did not say was directly before the trial court, and the State should have made its arguments regarding the information card to the trial court, and it should have had the opportunity to do so with the court that viewed the juror information cards firsthand.

¶34. Second, appellate courts "are ill equipped to find facts." *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985). An appellate court's "capacity for such is limited in that we have only a cold, printed record to review." *Id.* An appellate court's inability to make fact findings is particularly heightened "where the evidence is in substantial dispute[.]" *Id.* That the Court of Appeals made blatant mistakes in its fact-finding illustrates why appellate courts should refrain from doing so. The Court of Appeals found that "[a] review of Juror 10's information card, under 'employment,' shows three words." *Smith*, 2023 WL 2884723, at

16

*7. The Court of Appeals placed "employment" in quotation marks. *Id.* But the juror information card does not have any category labeled "employment"; rather, it has a category labeled "occupation" and a category labeled "employer." The three words with "academy" being the first word and the rest being illegible is under the category labeled "occupation." The category labeled "employer" on Juror 10's information card is also illegible. Academy Sports and Outdoors is an employer, not an occupation, which undermines the argument that the State made for the first time on appeal and that the Court of Appeals and now the majority of this Court accept. Second, the Court of Appeals found that the first word was "academy" and "the next two words, although somewhat faded, support the State's position to read 'sports and outdoors.'" *Id.* (internal quotation marks omitted). But "sports and outdoors" consists of three words, not two. The Court of Appeals' fact-finding on a cold record based on arguments made for the first time on appeal was inappropriate and potentially incorrect. The majority further asserts that counsel misrepresented the record regarding the juror information card, despite the fact that, if this was true, the State could have made that argument at the trial court level. The juror information card is indeed difficult to read, and I attach the record copy (redacted) to this dissent, to allow how difficult it is to read to speak for itself.

¶35. Third, the majority cites no caselaw for the proposition that a potential mistake, without assessing attorney credibility regarding the mistake, results in an automatic finding of pretext. Indeed, this Court has found that facts completely outside the record may be a

17

basis for a strike. ***Pruitt***, 986 So. 2d at 945. It follows that an honest mistake does not necessarily lead to an automatic finding of pretext for racial discrimination.

¶36. To further justify placing Juror 10 back into the jury pool, the majority also makes up out of whole cloth a reason that it alleges Smith gave for striking Juror 10. The majority, with no basis in fact, extrapolates that Smith gave age as a reason for striking Juror 10 when Smith with no uncertainty did not give age as a reason. Maj. Op. ¶¶ 16-18. The majority decides that Smith's given reason of "retired" amounted to age, rather than what "retired" actually is—an employment status. The majority then uses a comparison of Juror 10's age to Juror 8's age, despite those ages being eight years apart, because Smith did actually state that age was a reason to strike Juror 8, unlike Juror 10. The defense simply never gave age as a reason to strike Juror 10, yet the majority uses that never-given reason to make a finding of pretext. That the majority finds multiple facts that appear nowhere in the record of this case makes obvious that this case needs to be remanded for a hearing so that the proper fact-finding court, the trial court, may properly apply a ***Batson*** analysis.

¶37. The trial court failed to conduct the third prong of the ***Batson*** analysis for Juror 10. Under the current facts, the State failed to meet its burden of proof that the strike was pretext; at trial, its statements that Juror 10 was white and did not make any comments are insufficient to meet its burden of proof that Smith's race-neutral reason of employment history was pretext for racial discrimination. We should consequently remand the case for a ***Batson*** hearing to complete the third step of the ***Batson*** analysis for Juror 10. ***Miles***, 346 So. 3d at 846.

¶38. Because the trial court failed to complete the third step of the *Batson* analysis with regard to Juror 10 before placing that juror back in the jury pool, this Court should remand the case to the trial court for a *Batson* hearing. Consequently, I respectfully dissent.

**KITCHENS, P.J., JOINS THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.**

10

# COPIAH COUNTY JUROR INFORMATION CARD
## FOR OFFICIAL USE ONLY • PLEASE PRINT

| JUROR'S NAME • PLEASE PRINT | RACE | SEX | AGE |
|---|---|---|---|
| ███████████████████ | White | M | 5 |
| | CITY | ZIP | |
| | | | |
| | CITY | ZIP | |

| OCCUPATION (IF RETIRED, GIVE PREVIOUS OCCUPATION) | EMPLOYER | HOW LONG EMP.? |
|---|---|---|
| | | |

| HOME PHONE NO. | WORK PHONE NO. | IF YOU DO NOT HAVE A PHONE, PLEASE GIVE THE NUMBER OF A FRIEND OR RELATIVE. |
|---|---|---|
| | | NO. OF CHILDREN |

**MARITAL STATUS** ☒ MARRIED ☐ SINGLE ☐ DIVORCED ☐ SEPARATED ☐ WIDOWED

███████████████████████ E'S OCCUPATION/EMPLOYER (RED, GIVE PREVIOUS OCCUPATION)   HOW LONG EMP.?   N/A

LIVE OUTSIDE THE CITY LIMITS, HOW MANY MILES DO YOU LIVE (ONE WAY) FROM THE COURTHOUSE?

| HAVE YOU EVER SERVED ON A JURY? ☒ YES ☐ NO | IF YES, WHAT TYPE OF JURY? ☐ CRIMINAL ☐ CIVIL ☐ GRAND JURY |
|---|---|

| HAVE YOU EVER BEEN A DEFENDANT, PLAINTIFF OR WITNESS IN A CIVIL CASE? | ☐ YES | ☒ NO |
|---|---|---|

| HAVE YOU EVER BEEN ACCUSED, COMPLAINANT OR WITNESS IN A CRIMINAL TRIAL? | ☐ YES | ☒ NO |
|---|---|---|

## "I HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT."

SIGNATURE _____ DATE _____

OFFICIAL COPY - WHITE    ATTORNEY'S COPY - CANARY    ATTORNEY'S COPY - PINK    JUDGE'S COPY - GOLDENROD

# APPENDIX A TO PRESIDING JUSTICE KING'S DISSENT

1. ***Davis v. State***, 379 So. 3d 312 (Miss. 2024).

2. ***Clark v. State***, 343 So. 3d 943 (Miss. 2022).

3. ***Stewart v. State***, 291 So. 3d 738 (Miss. 2020)*.*

4. ***Eubanks v. State***, 291 So. 3d 309 (Miss. 2020).

5. ***Jones v. State***, 252 So. 3d 574 (Miss. 2018).

6. ***Thomas v. State***, 249 So. 3d 331 (Miss. 2018).

7. ***Flowers v. State***, 240 So. 3d 1082 (Miss. 2017), *reversed by **Flowers v. Mississippi***, 588 U.S. 284, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019); ***Flowers v. State***, 158 So. 3d 1009 (Miss. 2014), *vacated by **Flowers v. Mississippi***, 579 U.S. 913, 136 S. Ct. 2157, 195 L. Ed. 2d 817 (2016).

8. ***H.A.S. Elec. Contractors, Inc. v. Hemphill Const. Co., Inc.***, 232 So. 3d 117 (Miss. 2016).

9. ***Cox v. State***, 183 So. 3d 36 (Miss. 2015).

10. ***Hartfield v. State***, 161 So. 3d 125 (Miss. 2015).

11. ***McCoy v. State***, 147 So. 3d 333 (Miss. 2014).

12. ***Corrothers v. State***, 148 So. 3d 278 (Miss. 2014).

13. ***Batiste v. State***, 121 So. 3d 808 (Miss. 2013).

14. ***States v. State***, 88 So. 3d 749 (Miss. 2012).

15. ***Bailey v. State***, 78 So. 3d 308 (Miss. 2012)*.*

16. ***Davis v. State***, 76 So. 3d 659 (Miss. 2011).

17. ***Birkhead v. State***, 57 So. 3d 1223 (Miss. 2011).

18. ***Pitchford v. State***, 45 So. 3d 216 (Miss. 2010).

19. ***Long v. State***, 33 So. 3d 1122 (Miss. 2010).

20. ***Booker v. State***, 5 So. 3d 356 (Miss. 2008).

21. ***Estate of Jones v. Phillips***, 992 So. 2d 1131 (Miss. 2008).

22. ***Pruitt v. State***, 986 So. 2d 940 (Miss. 2008).

23. ***Chamberlin v. State***, 989 So. 2d 320 (Miss. 2008).

24. ***Strickland v. State***, 980 So. 2d 908 (Miss. 2008).

25. ***Hicks v. State***, 973 So. 2d 211 (Miss. 2007).

26. ***Flowers v. State***, 947 So. 2d 910 (Miss. 2007).

27. ***Mingo v. State***, 944 So. 2d 18 (Miss. 2006).

28. ***Chester v. State***, 935 So. 2d 976 (Miss. 2006).

29. ***Le v. State***, 913 So. 2d 913 (Miss. 2005), *overruled on other grounds*.

30. ***Jones v. State***, 904 So. 2d 149 (Miss. 2005).

31. ***Thorson v. State***, 895 So. 2d 85 (Miss. 2005).

32. ***Johnson v. State***, 875 So. 2d 208 (Miss. 2004).

33. ***Lynch v. State***, 877 So. 2d 1254 (Miss. 2004).

34. ***Branch v. State***, 882 So. 2d 36 (Miss. 2004).

35. ***Gaskin v. State***, 873 So. 2d 965 (Miss. 2004).

36. ***Perkins v. State***, 863 So. 2d 47 (Miss. 2003).

37. ***Howell v. State***, 860 So. 2d 704 (Miss. 2003).

38. ***Burnett v. Fulton***, 854 So. 2d 1010 (Miss. 2003).

39. ***Minor v. State***, 831 So. 2d 1116 (Miss. 2002).

40. *Smith v. State*, 835 So. 2d 927 (Miss. 2002).

41. *Horne v. State*, 825 So. 2d 627 (Miss. 2002).

42. *Catson v. State*, 823 So. 2d 473 (Miss. 2002).

43. *Walker v. State*, 815 So. 2d 1209 (Miss. 2002).

44. *Thomas v. State*, 818 So. 2d 335 (Miss. 2002).

45. *Mills v. State*, 813 So. 2d 688 (Miss. 2002).

46. *Hicks v. State*, 812 So. 2d 179 (Miss. 2002).

47. *Randolph v. State*, 852 So. 2d 547 (Miss. 2002).

48. *Hubbard v. State*, 819 So. 2d 1192 (Miss. 2001).

49. *Weeks v. State*, 804 So. 2d 980 (Miss. 2001).

50. *Carter v. State*, 799 So. 2d 40 (Miss. 2001).

51. *Berry v. State*, 802 So. 2d 1033 (Miss. 2001).

52. *Drake v. State*, 800 So. 2d 508 (Miss. 2001).

53. *Snow v. State*, 800 So. 2d 472 (Miss. 2001).

54. *Stevens v. State*, 806 So. 2d 1031 (Miss. 2001).

55. *Johnson v. State*, 792 So. 2d 253 (Miss. 2001).

56. *Puckett v. State*, 788 So. 2d 752 (Miss. 2001.

57. *Williams v. State*, 794 So. 2d 181 (Miss. 2001), *overruled on other grounds*.

58. *Overstreet v. State*, 787 So. 2d 1249 (Miss. 2001).

59. *Baldwin v. State*, 784 So. 2d 148 (Miss. 2001).

60. *Manning v. State*, 765 So. 2d 516 (Miss. 2000).

61. ***Davis v. State***, 767 So. 2d 986 (Miss. 2000).

62. ***Gary v. State***, 760 So. 2d 743 (Miss. 2000).

63. ***Humphrey v. State***, 759 So. 2d 368 (Miss. 2000), *superseded by rule on other grounds*.

64. ***Webster v. State***, 754 So. 2d 1232 (Miss. 2000).

65. ***Jasper v. State***, 759 So. 2d 1136 (Miss. 1999).

66. ***McGilberry v. State***, 741 So. 2d 894 (Miss. 1999).

67. ***Edwards v. State***, 737 So. 2d 275 (Miss. 1999).

68. ***Baldwin v. State***, 732 So. 2d 236 (Miss. 1999).

69. ***Taylor v. State***, 733 So. 2d 251 (Miss. 1999).

70. ***Fleming v. State***, 732 So. 2d 172 (Miss. 1999).

71. ***Berry v. State***, 728 So. 2d 568 (Miss. 1999).

72. ***Finley v. State***, 725 So. 2d 226 (Miss. 1998).

73. ***Gibson v. State***, 731 So. 2d 1087 (Miss. 1998).

74. ***Sewell v. State***, 721 So. 2d 129 (Miss. 1998).

75. ***Magee v. State***, 720 So. 2d 186 (Miss. 1998).

76. ***Walters v. State***, 720 So. 2d 856 (Miss. 1998).

77. ***Brewer v. State***, 725 So. 2d 106 (Miss. 1998).

78. ***Manning v. State***, 726 So. 2d 1152 (Miss. 1998), *overruled on other grounds*.

79. ***Randall v. State***, 716 So. 2d 584 (Miss. 1998).

80. ***Booker v. State***, 716 So. 2d 1064 (Miss. 1998).

81. ***Woodward v. State***, 726 So. 2d 524 (Miss. 1997).

82. *McFarland v. State*, 707 So. 2d 166 (Miss. 1997).

83.  *Lester v. State*, 692 So. 2d 755 (Miss. 1997), *overruled on other grounds*.

84. *Simon v. State*, 688 So. 2d 791 (Miss. 1997).

85. *Collins v. State*, 691 So. 2d 918 (Miss. 1997).

86.  *Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

87. *Walker v. State*, 671 So. 2d 581 (Miss. 1995).

88. *Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

89. *Carr v. State*, 655 So. 2d 824 (Miss. 1995).

90. *Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

91.  *Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

92. *Harper v. State*, 635 So. 2d 864 (Miss. 1994).

93. *Chase v. State*, 645 So. 2d 829 (Miss. 1994).

94.  *Hatten v. State*, 628 So. 2d 294 (Miss. 1993).

95.  *Simon v. State*, 633 So. 2d 407 (Miss. 1993), *vacated on other grounds by Simon v. Mississippi*, 513 U.S. 956, 115 S. Ct. 413, 130 L. Ed. 2d 329 (1994).

96. *Dedeaux v. J.I. Case Co., Inc.*, 611 So. 2d 880 (Miss. 1992).

97. *Griffin v. State*, 610 So. 2d 354 (Miss. 1992).

98. *Griffin v. State*, 607 So. 2d 1197 (Miss. 1992).

99. *Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

100. *Abram v. State*, 606 So. 2d 1015 (Miss. 1992), *overruled on other grounds*.

101. *Bush v. State*, 597 So. 2d 656 (Miss. 1992).

102. *Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

103. *Govan v. State*, 591 So. 2d 428 (Miss. 1991).

104. *Willie v. State*, 585 So. 2d 660 (Miss. 1991), *overruled on other grounds*.

105. *Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

106. *Turner v. State*, 573 So. 2d 657 (Miss. 1990).

107. *Bradley v. State*, 562 So. 2d 1276 (Miss. 1990).

108. *Sudduth v. State*, 562 So. 2d 67 (Miss. 1990).

109. *Dennis v. State*, 555 So. 2d 679 (Miss. 1989).

110. *Benson v. State*, 551 So. 2d 188 (Miss. 1989).

111. *Davis v. State*, 551 So. 2d 165 (Miss. 1989).

112. *Conerly v. State*, 544 So. 2d 1370 (Miss. 1989).

113. *McDonald v. State*, 538 So. 2d 778 (Miss. 1989).

114. *Wheeler v. State*, 536 So. 2d 1347 (Miss. 1988).

115. *Chisolm v. State*, 529 So. 2d 635 (Miss. 1988).

116. *Goggins v. State*, 529 So. 2d 649 (Miss. 1988).

117. *Chisolm v. State*, 529 So. 2d 630 (Miss. 1988).

118. *Dedeaux v. State*, 528 So. 2d 300 (Miss. 1988).

119. *Johnson v. State*, 529 So. 2d 577 (Miss. 1988).

120. *Taylor v. State*, 524 So. 2d 565 (Miss. 1988).

121. *Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).